# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

AROMA WINES & EQUIPMENT, INC V COLUMBIA DISTRIBUTION SERVICES, INC

Docket Nos. 148907 and 148909. Argued March 10, 2015 (Calendar No. 1). Decided June 17, 2015.

Aroma Wines & Equipment, Inc., brought an action in the Kent Circuit Court against Columbian Distribution Services, Inc., alleging (1) breach of contract, (2) violation of the Uniform Commercial Code, (3) common-law conversion, and (4) statutory conversion under MCL 600.2919a(1)(a). Aroma had rented climate-controlled warehouse space from Columbian to store its wine while awaiting sale. Columbian was required to maintain the wine within a specific temperature range. After Aroma fell behind in its monthly rental payments, Columbian removed the wine from its climate-controlled space to an uncontrolled environment. Aroma alleged that Columbian moved the wine to rent the space to higher-paying customers and that the temperature changes destroyed the wine's salability. Columbian claimed that the move was temporary, to allow it to renovate the climate-controlled space and increase its storage capacity, and that none of the wine was exposed to extreme temperature conditions. In its statutory conversion claim, Aroma alleged that Columbian converted Aroma's wine inventory to its own use and sought treble damages. Columbian countersued for breach of contract in light of Aroma's nonpayment of rent. At the close of Aroma's proofs, Columbian moved for a directed verdict on the statutory conversion claim. Columbian asserted that implicit in the word "use" in MCL 600.2919a is an inference limiting the definition of that word to using something for the purpose intended by the nature of the product or good, such as drinking or selling the wine. Aroma, however, argued for a broader interpretation, namely, that use encompassed acts by which the converter exercised its dominion and control over the wine, such as Columbian's using the wine as leverage in the contract dispute. The court, Dennis B. Leiber, J., agreed with Columbian and granted its motion for a directed verdict on Aroma's statutory conversion claim. The jury then found that Columbian had breached its contract with Aroma and converted Aroma's wine. The jury also found that Aroma did not breach its contract with Columbian. The court denied Aroma's motion for attorney fees. Aroma appealed, and the Court of Appeals, WHITBECK, P.J., and HOEKSTRA and GLEICHER, JJ., affirmed in part, reversed in part, and remanded, concluding that the most relevant definition of "use" in the context of conversion was to employ the property for some purpose. The panel held that if the jury believed the evidence showing that Columbian moved Aroma's wine for its own purposes, whether to sell the space to other customers, complete a construction project, or use the wine as leverage against Aroma, the jury could have determined that Columbian converted the wine to its own use. The panel also affirmed the trial court's ruling on attorney fees. 303 Mich App 441 (2013). Aroma and

Columbian filed separate applications for leave to appeal, which the Supreme Court granted, limited to the issue regarding the proper interpretation of the language "converting property to the other person's own use" in MCL 600.2919a. 497 Mich 864 (2014).

In a unanimous opinion by Justice KELLY, the Supreme Court *held*:

The statutory action for conversion under MCL 600.2919a(1)(a) is not the same as an action for common-law conversion. Rather, by requiring the conversion of property to be to the defendant's own use, MCL 600.2919a(1)(a) requires the plaintiff to show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose was not the property's ordinarily intended purpose.

1. At common law, conversion was any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with that person's rights therein. MCL 600.2919a(1)(a) created a remedy against a person who steals or embezzles property or converts property to the other person's own use. A defendant who violates the statute may be liable for treble damages. A plaintiff who has proved common-law conversion does not necessarily have a cause of action under MCL 600.2919a(1)(a) because the Legislature's inclusion of the phrase "to the other person's own use" indicated its intent to limit the statute's application to a subset of common-law conversions in which the common-law conversion was to the other person's own use. Converting property to the defendant's own use means only that the defendant employs another person's property for any purpose, as long as it is to the defendant's own purposes, that is, for a purpose personal to the converter.

2. The circuit court erred by granting Columbian's motion for directed verdict on the statutory conversion claim. Aroma proffered evidence that would have allowed the jury to conclude that Columbian used the wine for some purpose personal to its interests. If the jury believed Aroma's evidence that Columbian moved the wine from the controlled-temperature storage area for its own purposes (whether to sell the space to other customers, complete a construction project, or use the wine as leverage against Aroma), the jury could have determined that Columbian converted the wine to its own use.

Affirmed and remanded to the circuit court for further proceedings.

©2015 State of Michigan

# OPINION

Chief Justice:    Justices:
Robert P. Young, Jr.    Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

FILED June 17, 2015

STATE OF MICHIGAN

SUPREME COURT

AROMA WINES & EQUIPMENT, INC.,

       Plaintiff/Counterdefendant-
       Appellant,

       No. 148907

v

COLUMBIAN DISTRIBUTION
SERVICES, INC.,

       Defendant/Counterplaintiff-
       Appellee.

---

AROMA WINES & EQUIPMENT, INC.,

       Plaintiff/Counterdefendant-
       Appellee/Cross-Appellant,

       No. 148909

COLUMBIAN DISTRIBUTION
SERVICES, INC.,

       Defendant/Counterplaintiff-
       Appellant/Cross-Appellee.

---

BEFORE THE ENTIRE BENCH

KELLY, J.

By 2005 PA 44, the Legislature amended MCL 600.2919a(1)(a) to create a cause of action against someone "converting property to [that] person's own use." In this case, we consider whether this statutory language is coextensive with the common-law tort of conversion or, if not, what additional conduct is required to show that a defendant converted property to his, her, or its "own use."

We hold that "converting property to [that] person's own use," as used in MCL 600.2919a, is not coextensive with common-law conversion. By enacting MCL 600.2919a, the Legislature intended to create a separate statutory cause of action for conversion "in addition to any other right or remedy" a victim of conversion could obtain at common law.[1] In this case, defendant argues that conversion "to the other person's own use" requires a showing that the other person used the converted property for the property's common or intended purpose. We decline to adopt such a narrow interpretation of "own use." Rather, we hold that the separate statutory cause of action for conversion "to the other person's own use" under MCL 600.2919a(1)(a) requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose.

---

[1] MCL 600.2919a(2). See *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 10; 779 NW2d 237 (2010).

2

In this case, plaintiff proffered evidence at trial that would allow the jury to conclude that defendant used the wine for some purpose personal to defendant's interests. As a result, the circuit court erred by granting defendant's motion for directed verdict on this claim. We affirm the judgment of the Court of Appeals and remand this case to the Kent Circuit Court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff, Aroma Wines & Equipment, Inc., is a wholesale wine importer and distributor. Defendant, Columbian Distribution Services, Inc., operates warehouses in Michigan. Starting in 2006, Aroma agreed to rent some of Columbian's climate-controlled warehouse space to store its wine while awaiting sale.[2] According to the parties' agreement, Columbian was required to maintain the wine within a temperature range of 50 to 65 degrees Fahrenheit. While the agreement required Columbian to provide Aroma with notice before Columbian could transport Aroma's wine to a different warehouse complex, Columbian reserved the right under the agreement to move the wine without notice "within and between any one or more of the warehouse buildings which comprise the warehouse complex" identified in the agreement.

Aroma's sales declined sharply during 2008, and Aroma began falling behind on its monthly payments to Columbian. In January 2009, Columbian notified Aroma that it was asserting a lien on Aroma's wine and that Aroma could not pick up any more wine or ship any more orders until past due invoices were paid. In March 2009, Columbian

---

[2] The parties signed a second agreement in February 2008, and this agreement governs the dispute arising here.

3

released to Aroma a small portion of its wine in exchange for a $1,000 payment on Aroma's account. Notwithstanding this payment, Columbian asserted that Aroma had accrued a past-due balance of more than $20,000 on the account.

At some point during this dispute, and contrary to the terms of the contract, Columbian removed the wine from its climate-controlled space and transported it to an uncontrolled environment.[3] Aroma alleges that Columbian moved its wine to rent the space to higher-paying customers. Columbian concedes that it moved Aroma's wine but claims that the move was temporary, that its purpose was to renovate the climate-controlled space and thereby increase its storage capacity, and that none of the wine was exposed to extreme temperature conditions. Aroma claims that the temperature changes destroyed the wine's salability.

Aroma filed the instant suit in the Kent Circuit Court. Its second amended complaint alleged four separate causes of action: (1) breach of contract, (2) violation of the Uniform Commercial Code, (3) common-law conversion, and (4) statutory conversion under MCL 600.2919a(1)(a). As part of its statutory conversion claim, Aroma alleged that Columbian "converted [Aroma's] wine inventory to its own use" and sought treble damages for the alleged statutory conversion. In response, Columbian countersued for breach of contract based on Aroma's nonpayment of rent.

The case proceeded to trial. At the close of Aroma's proofs, Columbian moved for a directed verdict on Aroma's fourth count, the statutory conversion claim, arguing

---

[3] For the purposes of our review, the exact timing of Columbian's removal of the wine is irrelevant.

4

that Aroma had failed to provide any evidence to support its assertion that Columbian converted Aroma's wine to its own use. In support of the motion, Columbian emphasized that implicit in the definition of the word "use" is an inference limiting the definition to "using something for the purpose . . . intended by the nature of the product or good." Aroma sought a broader interpretation of "use" that did not limit its scope to acts involving the wine's intended purpose but instead encompassed acts by which the converter exercised its dominion and control over the wine. Under this interpretation, then, Columbian could "use" Aroma's wine by asserting dominion and control over that wine as leverage in the dispute over the balance due Columbian. The court agreed with Columbian's interpretation of "use," concluded that "one would have to drink [the wine] or perhaps sell it" to use it, and granted Columbian's motion for a directed verdict on Aroma's statutory conversion claim.

Trial continued on Aroma's remaining counts and on Columbian's counterclaim. At the conclusion of the trial, the jury found that Columbian had breached its contract with Aroma and converted Aroma's wine, awarding Aroma damages totaling $275,000. The jury also found that Aroma did not breach its contract with Columbian and, as a result, did not offset the award granted to Aroma by any amount.

Aroma appealed the circuit court's decision to grant Columbian's motion for a directed verdict on Aroma's statutory conversion claim. The Court of Appeals reversed, holding that the circuit court's interpretation of "use" was too narrow.[4] While the panel

---

[4] *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441-448; 844 NW2d 727 (2013).

noted the various definitions of "use," it determined that "most relevant in the context of conversion, 'use' is defined as 'to employ for some purpose[.]' "[5] The panel explained that contrary to the circuit court's conclusion, "drinking or selling the wine are not the only ways that [Columbian] could have employed [Aroma's] wine to its own purposes."[6] Because Aroma "presented some evidence to support its theory that [Columbian] filled the temperature-controlled storage space that [Aroma's] wine was moved out of with other customers' products," and because Columbian's claim that it was engaged in an expansion project "itself could be considered an act of employing the wine to [its] own purposes," Columbian was not entitled to a directed verdict.[7] Rather, the panel concluded that

> [i]f a jury believed the evidence showing that [Columbian] moved [Aroma's] wine for its own purposes—whether it be to sell the space to other customers or complete a construction project—or that it used the wine as leverage against [Aroma], it could have determined that [Columbian] converted the wine to its own use.[8]

As a result, the Court of Appeals remanded this case to the circuit court for such a jury determination.[9]

---

[5] *Id*. at 447-448, quoting *Random House Webster's College Dictionary* (1992) (alteration in original).

[6] *Aroma Wines*, 303 Mich App at 448.

[7] *Id*. at 448-449.

[8] *Id*. at 449.

[9] The Court of Appeals also held that it "cannot simply order treble damages upon a finding of [statutory] conversion" and that if on remand the jury were to find that Columbian committed statutory conversion, the jury must also determine whether to award treble damages. *Id*. at 449-450.

Both parties then sought leave to appeal the Court of Appeals' interpretation of "own use." Aroma's appeal (Docket No. 148907) claimed that, like the circuit court, the Court of Appeals had erroneously defined statutory conversion as containing an additional element beyond those required to show common-law conversion. On this theory, and on the basis of the jury's finding of common-law conversion at trial, no further proceedings on the question of statutory conversion would be necessary and Columbian would be liable for statutory conversion. Columbian agreed with the Court of Appeals that statutory conversion requires a separate finding that the conversion was to the converter's "own use," but filed a separate application for leave to appeal (Docket No. 148909) that sought to reinstate the circuit court's narrower definition of "own use."

We granted both parties' applications for leave to appeal, limited to the single issue regarding "the proper interpretation of 'converting property to the other person's own use,' as used in MCL 600.2919a."[10]

---

[10] *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 864 (2014). Aroma's application for leave to appeal in Docket No. 148907 also asserted an issue outside this Court's limited order granting leave: that the Court of Appeals erred by concluding that treble damages were discretionary upon a finding of statutory conversion. We deny the application for leave to appeal with respect to this issue because we are not persuaded that the question presented should be reviewed by this Court. Our order granting leave to appeal also indicated that an application for leave to appeal as cross-appellant by Aroma in Docket No. 148909 remained pending. Because this application as cross-appellant raised the same issues presented in Aroma's application for leave to appeal in Docket No. 148907, the application for leave to appeal as cross-appellant in Docket No. 148909 is denied as moot.

7

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for a directed verdict.[11] A party is entitled to a directed verdict if the evidence, when viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law.[12]

We also review de novo questions of statutory interpretation.[13] "When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature."[14] The language of the statute is the most reliable evidence of that intent, and we enforce the clear and unambiguous language of the statute as written.[15] "Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory."[16]

## III. LEGAL ANALYSIS

Under the common law, conversion is " 'any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights

---

[11] *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011).

[12] *Id.*, citing *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 131; 666 NW2d 186 (2003).

[13] *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013).

[14] *Id.*, citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[15] *Whitman*, 493 Mich at 311, citing *Sun Valley Foods*, 460 Mich at 236.

[16] *Whitman*, 493 Mich at 311-312, citing *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

therein.' "[17]  At issue here is whether a plaintiff who has proved common-law conversion necessarily has a cause of action under MCL 600.2919a(1)(a) and, if not, what additional conduct is required to show that a defendant converted property to his, her, or its own use.

We begin, then, with the text of MCL 600.2919a, which states in full:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.[18]

---

[17] *Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438; 104 NW2d 360 (1960), quoting *Nelson & Witt v Texas Co*, 256 Mich 65, 70; 239 NW 289 (1931).

[18] While the parties and this Court refer to a claim pursued under MCL 600.2919a as a "statutory conversion" claim, the plain language of MCL 600.2919a(1)(a) makes clear that a claim also accrues to the victim of "[a]nother person's stealing or embezzling" property.  Moreover, MCL 8.3*l* provides that "[t]he word 'person' may extend and be applied to bodies politic and corporate, as well as to individuals."  As a result, whether one or both of the parties involved in an action pursuant to MCL 600.2919a are corporations does not alter the foregoing analysis.

9

Aroma's second amended complaint alleges that Columbian "converted [Aroma's] wine inventory to its own use" and that, as a result, MCL 600.2919a(1)(a) "applies to the facts of this case."[19]

Words in a statute are interpreted "according to the common and approved usage of the language," but "technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."[20] In addition, "when the Legislature chooses to employ a common-law term without indicating an intent to alter the common law, the term will be interpreted consistent with its common-law meaning."[21] The word "converting," used in MCL 600.2919a(1)(a), is one word that has acquired a peculiar and appropriate meaning in the law because it is derived from the common-law tort identified above and is used in that context here.[22]

---

[19] In disputing the meaning of "conversion . . . to [Columbian's] own use," the parties essentially concede that no "stealing" or "embezzling" occurred within the meaning of MCL 600.2919a(1)(a) and that MCL 600.2919a(1)(b) is not at issue in this case. Indeed, under any reading of the statute, MCL 600.2919a applies to all "stealing" and "embezzling." Furthermore, we note that "possessing . . . converted property" with the knowledge "that the property . . . was converted" also exposes a person to liability under MCL 600.2919a(1)(b). But because Aroma has not alleged Columbian's potential violation of MCL 600.2919a(1)(b), we leave for another day the interpretation of that provision.

[20] MCL 8.3a.

[21] *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013), citing *Stone v Williamson*, 482 Mich 144, 170; 753 NW2d 106 (2008) (opinion by CAVANAGH, J.).

[22] See *Appletree*, 485 Mich at 9 (referring to MCL 600.2919a as "the statutory conversion provision").

10

Nevertheless, that is only the beginning of our analysis of the phrase "converting property to the other person's own use." Aroma claims that the jury's verdict against Columbian for common-law conversion necessarily means that Columbian had violated its statutory counterpart, namely, MCL 600.2919a(1)(a). Under this theory, common-law conversion originated as "conversion to the other person's own use" and, as a result, the Legislature's use of the phrase "converting to the other person's own use" simply identified common-law conversion as, by itself, sufficient to establish a defendant's fault for purposes of MCL 600.2919a(1)(a). To assess the validity of this argument we turn to the history of common-law conversion.

## A. COMMON-LAW CONVERSION

According to Blackstone, several distinct actions in tort originated from the principle that "if an acquisition of goods by either force or fraud were allowed to be a sufficient title, all property would soon be confined to the most strong, or the most cunning" and all other people "could never be secure of their possessions."[23] The common law secures this right to personal property by allowing someone wrongfully deprived of his or her property to recover either that property or monetary damages, or both, for the wrongful deprivation.

Three distinct causes of action are relevant to our analysis. Each arose out of the distinct ways that a wrongful deprivation could occur. Someone who wrongfully took

---

[23] 3 Blackstone, Commentaries on the Law of England, p *145.

11

property was liable in trespass to the property owner.[24] Someone who wrongfully detained property that came to that person legally was liable in detinue to the property owner.[25] Someone who refused to return lost property to its rightful owner, instead using it himself or herself or disposing of it to another, was liable in trover.[26] This latter cause of action, arising out of the finder's *conversion* of the property, was "invented through the ingenuity of some long forgotten common law pleader" who sought "to fill in the gaps left by the actions of trespass . . . and detinue . . . ."[27]

Correspondingly, Blackstone explained the origin of trover as allowing the "recovery of damages against such person as had found another's goods, and refused to deliver them on demand, but converted them to his own use."[28] In a technical sense, trover was originally actionable only when the property was "lost to the true owner" in perpetuity, because to convert goods meant to dispose of them, that is, "to make away with them, to deal with them in such a way that neither owner nor wrongdoer had any further possession of them; for example, by consuming them, or by destroying them, or

---

[24] Prosser, *Nature of Conversion*, 42 Cornell L Rev 168, 169 (1957). See also Salmond, *Observations on Trover and Conversion*, 21 Law Q Rev 43, 44 (1905).

[25] Salmond, 21 Law Q Rev at 44.

[26] Prosser, 42 Cornell L Rev at 169.

[27] *Id*.

[28] 3 Blackstone, p *152 (emphasis omitted).

by selling them, or otherwise delivering them to some third person."[29] "[M]ere detention" of another person's property "is not a conversion in the original sense."[30]

Nevertheless, "[a]lmost from the beginning . . . the effort was made to expand trover into the field of the wrongful detention of chattels [that were] not found."[31] A plaintiff who brought an action for trover was able to claim that the defendant refused to deliver property upon the plaintiff's demand as "evidence of a conversion—evidence, that is to say, that the defendant has already made away with the property and therefore cannot and does not restore it."[32] Eventually, "[j]uries were directed as a matter of law to find a conversion on proof of demand and refusal without lawful justification."[33]

Before the turn of the twentieth century, the meaning of conversion as originally understood at common law began to evolve. Justice COOLEY's treatise on torts defined conversion as "[a]ny distinct act of dominion wrongfully exerted over one's property in

---

[29] Salmond, 21 Law Q Rev at 44. Trover initially arose out of an allegation that the plaintiff "was possessed of certain goods, that he casually lost them, that the defendant found them, and that the defendant 'converted them to his own use.' " Prosser, 42 Cornell L Rev at 169.

[30] Salmond, 21 Law Q Rev at 47.

[31] Prosser, 42 Cornell L Rev at 169.

[32] Salmond, 21 Law Q Rev at 47 (emphasis omitted). See also 3 Blackstone, p *152 ("[A]ny man may take the goods of another into possession, if he finds them; but no finder is allowed to acquire a property therein . . . and therefore he must not convert them to his own use, which the law presumes him to do, if he refuses to restore them to the other: for which reason such refusal alone is, *prima facie*, sufficient evidence of a conversion.").

[33] Salmond, 21 Law Q Rev at 47.

denial of his right, or inconsistent with it . . . ."[34]  Importantly, Justice COOLEY quoted Georgia caselaw from 1846 for the proposition that " 'it is not necessary that it should be shown that he has applied [the converted property] to his own use.' "[35]  While "it is a conversion where one takes the plaintiff's property and sells or otherwise disposes of it, it is equally a conversion if he takes it for a temporary purpose only, if in disregard of the plaintiff's right[,] . . . though he return [the property] to the owner."[36]

This Court's conversion caselaw bears out this development in the common law. Justice COOLEY's 1874 decision for this Court in *Kreiter v Nichols* involved the conversion of beer and emphasized that if someone "converts [beer] to his own use in any form, a civil action will lie to recover from him the value," and "this civil action would not depend in any degree upon the method or purpose of the conversion."[37]  In explaining that conversion of beer to the other person's "own use" was broad in purpose, the Court observed that "the legal responsibility to pay for [the beer's] value would be the same" whether the converter "destroyed [it] from a belief in its deleterious effects, or made way with [it] in carousals or private drinking . . . ."[38]  By 1884, Justice COOLEY's decision for

---

[34] Cooley, Torts (2d ed), p *448.

[35] *Id.*, quoting *Liptrot v Holmes*, 1 Ga 381, 391 (1846).

[36] Cooley, pp *448-449.

[37] *Kreiter v Nichols*, 28 Mich 496, 498 (1874).  Note that, to the extent *Kreiter* held that "the brewing of beer is a lawful business," *id.*, the decision was abrogated by US Const, Am XVIII, and subsequently unabrogated by US Const, Am XXI.  See generally Kyvig, *Repealing National Prohibition* (Kent, Ohio: Kent State Univ Press, 2d ed 2000).

[38] *Kreiter*, 28 Mich at 498-499.

14

this Court in *Daggett v Davis* recognized that under certain circumstances, there may be "a technical conversion . . . , though no use was made of the" property.[39] Under those circumstances, a plaintiff is "entitled to recover only his actual damages," not the full value of the property.[40]

From this development in the common law, the scope of a common-law conversion is now well-settled in Michigan law as " 'any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.' "[41] More recently, *Thoma v Tracy Motor Sales, Inc* reaffirmed this definition of conversion and adopted the Restatement of Torts to illustrate examples of "the ways in which a conversion may be committed."[42] The excerpt adopted by the Court states:

> "A conversion may be committed by
>
> "(a) intentionally dispossessing another of a chattel,
>
> "(b) intentionally destroying or altering a chattel in the actor's possession,
>
> "(c) using a chattel in the actor's possession without authority so to use it,

---

[39] *Daggett v Davis*, 53 Mich 35, 38; 18 NW 548 (1884).

[40] *Id*. at 39.

[41] *Nelson & Witt*, 256 Mich at 70, quoting *Aylesbury Mercantile Co v Fitch*, 22 Okla 475; 99 p 1089 (1908) (Syllabus).

[42] *Thoma*, 360 Mich at 438, citing *Nelson & Witt*, 256 Mich at 70.

15

"(d) receiving chattel pursuant to a sale, lease, pledge, gift or other transaction intending to acquire for himself or for another a proprietary interest in it,

"(e) disposing of a chattel by sale, lease, pledge, gift or other transaction intending to transfer a proprietary interest in it,

"(f) misdelivering a chattel, or

"(g) refusing to surrender a chattel on demand."[43]

These examples crystallize the common law's development over the centuries to encompass many different ways in which property may be converted, beyond the original meaning of finding lost property and converting that property to the converter's own use. In addition to the Restatement's example, this Court has held that a sheriff or court officer who unlawfully seizes personal property is, in the absence of governmental immunity, liable for conversion, even if he or she does so in the execution of a court order.[44]

To summarize: While the tort of conversion originally required a separate showing that the converter made some use of the property that amounted to a total deprivation of that property to its owner, by the twentieth century common-law conversion more broadly encompassed any conduct inconsistent with the owner's property rights. In this context, the Legislature enacted MCL 600.2919a, to which we now turn.

---

[43] *Thoma*, 360 Mich at 438, quoting 1 Restatement, Torts, § 223.

[44] *Kenney v Ranney*, 96 Mich 617, 618; 55 NW 982 (1893) ("We understand it to be the settled law that when one, by a trespass, takes the property of another, and sells it, he is liable for the conversion, and that no demand is necessary, and the question of good or bad faith is not necessarily involved. This doctrine is applied daily in cases against sheriffs and constables, where property is unlawfully seized and sold upon execution.").

## B. STATUTORY CONVERSION

For most of Michigan's history, conversion was a tort for which the only redress was an action at common law. Indeed, when the Legislature first enacted what we now refer to as the statutory conversion remedy, in 1976, its terms did not provide a separate remedy against a converter. As originally enacted, MCL 600.2919a stated:

> A person damaged as a result of another person's buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney's fees. This remedy shall be in addition to any other right or remedy the person may have at law or otherwise.[45]

In interpreting this now-defunct provision, the Court of Appeals has explained that, initially, MCL 600.2919a was not "designed to provide a remedy against the individual who has actually stolen, embezzled, or converted the property."[46] Rather, it proscribed conduct that "occur[s] after the property has been stolen, embezzled, or converted by the principal . . . ."[47]

In 2005, the Legislature amended MCL 600.2919a to its present language.[48] In particular, Subsection (1)(a) created a remedy against a person who "steal[s] or

---

[45] Former MCL 600.2919a as added by 1976 PA 200.

[46] *Marshall Lasser, PC v George*, 252 Mich App 104, 112; 651 NW2d 158 (2002).

[47] *Id.*

[48] 2005 PA 44 took immediate effect on June 16, 2005. See *Appletree*, 485 Mich at 9 n 16 ("Before its amendment, MCL 600.2919a applied only to third parties who aided another's act of conversion or embezzlement, and did not apply to the person who directly converted or embezzled, as it does now.").

embezzl[es] property or convert[s] property to the other person's own use." The interpretive issue before us is whether this language in Subsection (1)(a) allows a plaintiff to recover treble damages in all instances of common-law conversion or, instead, whether a plaintiff seeking damages for conversion under Subsection (1)(a) must allege additional conduct to show that the defendant converted the plaintiff's property "to the [defendant's] own use."

The historical analysis of the common-law tort of conversion discussed earlier shows that Michigan law's understanding of conversion shifted away from requiring an additional showing that the conversion occurred for the other person's "own use" and toward allowing a property owner to recover for any act of dominion inconsistent with that person's rights in that property. This shift in the common law occurred long before the Legislature's 2005 amendments of MCL 600.2919a. As a result, the Legislature's inclusion of the phrase "to the other person's own use" in § 2919a(1)(a) indicates its intent to limit § 2919a(1)(a) to a subset of common-law conversions in which the common-law conversion was to the other person's "own use."[49]

---

[49] Aroma claims that the House legislative analysis shows that the Legislature intended to extend liability under MCL 600.2919a to *all* converters simply because it identified "the apparent problem" of the former MCL 600.2919a as failing to allow "a victim [to] sue the person who actually commits the theft," embezzlement, or conversion. House Legislative Analysis, HB 4356 (March 16, 2005). As a matter of logic, this assertion is faulty because MCL 600.2919a, as initially enacted, did not apply to every instance of theft, embezzlement, or conversion, and only provided a cause of action against a third party who had knowledge of the status of stolen, embezzled, or converted property. See former MCL 600.2919a. As a result, the Legislature had a range of options open to it when it decided to enact policy that expanded § 2919a to encompass additional conduct, and it chose one of those options by requiring a victim of conversion to show that the conversion was to the other person's "own use."

18

The Court of Appeals did not specifically address whether an additional element is required to transform common-law conversion into conversion to the other person's "own use" pursuant to MCL 600.2919a(1)(a). However, implicit in its analysis is that a plaintiff seeking treble damages pursuant to § 2919a(1)(a) must "present[] evidence that the conversion was to defendant's 'own use' as required by MCL 600.2919a(1)(a)."[50]

Moreover, as a matter of statutory interpretation, Aroma's reading of the statute in light of the House legislative analysis is faulty on two levels. First, the language of the amended MCL 600.2919a is unambiguous and, as a result, the examination of legislative history "of any form" is not proper. *In re Certified Question from the United States Court of Appeals for the Sixth Circuit*, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003). Second, even if legislative history were relevant to the interpretation of MCL 600.2919a, legislative analyses

> are entitled to little judicial consideration in resolving ambiguous statutory provisions because: (1) such analyses are not an official form of legislative record in Michigan, (2) such analyses do not purport to represent the views of legislators, individually or collectively, but merely to set forth the views of professional staff offices situated within the legislative branch, and (3) such analyses are produced outside the boundaries of the legislative process as defined in the Michigan Constitution, and which is a prerequisite for the enactment of a law. [*Id.*, citing Const 1963, art 4, §§ 26 and 33.]

[50] *Aroma Wines*, 303 Mich App at 447. Although the Court of Appeals' opinion in this case is the first published decision to interpret the amended version of MCL 600.2919a, Aroma claims that several unpublished decisions of the Court of Appeals support its assertion that common-law conversion and conversion to the other person's "own use" are synonymous. We address these cases for the sake of completeness and to observe that none of these cases withstands scrutiny even as merely persuasive authority. See MCR 7.215(C)(1) ("An unpublished opinion is not precedentially binding under the rule of stare decisis.").

Three of Aroma's cited cases concluded that no common-law conversion occurred, so they can only stand for the uncontroversial principle that common-law conversion is a threshold to conversion to the other person's own use. See *Victory Estates LLC v NPB Mortgage LLC*, unpublished opinion per curiam of the Court of Appeals, issued November 20, 2012 (Docket No. 307457); *Paul v Paul*, unpublished opinion per curiam of the Court of Appeals, issued December 17, 2013 (Docket No.

19

Similarly, Aroma's counsel in opposition to the motion for directed verdict also presumed that common-law conversion "has a slightly different standard" than § 2919a(1)(a). We turn now to the scope of that difference—*what* conduct satisfies the additional statutory requirement that the conversion was to the other person's "own use."[51]

311609); *Armstrong v O'Hare*, unpublished opinion per curiam of the Court of Appeals, issued April 22, 2014 (Docket No. 308635). A fourth case, *JP Morgan Chase Bank v Jackson GR, Inc*, unpublished opinion per curiam of the Court of Appeals, issued July 15, 2014 (Docket No. 311650), simply held that treble damages are unavailable when no damages occurred in the first place or would not have even been contested. Other cases did not discuss the "own use" language of § 2919a(1)(a), presumably because the issue was not raised. See *J Franklin Interests, LLC v Meng*, unpublished opinion per curiam of the Court of Appeals, issued September 29, 2011 (Docket No. 296525); *Stockbridge Capital, LLC v Watcke*, unpublished opinion per curiam of the Court of Appeals, issued March 4, 2014 (Docket No. 313241).

Finally, Aroma cites *J & W Transp, LLC v Frazier*, unpublished opinion per curiam of the Court of Appeals, issued June 1, 2010 (Docket No. 289711), which bears examining in slightly more detail. There, the panel suggested a two-step process for determining whether a plaintiff could properly assert a statutory conversion claim because it observed that "defendants failed to return plaintiffs' property after demand had been made *and used property in their possession without the authority to do so*." *Id*. at 15 (emphasis added). As a result, this decision, far from supporting Aroma's theory of § 2919a, actually undercuts it. Nevertheless, none of the unpublished Court of Appeals opinions cited for Aroma's theory provides this Court with any meaningful analysis of § 2919a, because the issue has not been squarely presented to any appellate court until this case.

[51] We further emphasize that the Legislature intended MCL 600.2919a to work alongside the common law by creating a nonexclusive statutory cause of action in addition to other remedies available, including that for common-law conversion. See MCL 600.2919a(2); *Appletree*, 485 Mich at 10.

## C. DEFINITION OF "OWN USE"

The word "use" is one of the most common words in the English language[52] and conveys different shades of meaning as either a noun (as in, "an object's *use*") or a verb (as in, "to *use* an object"). Within the phrase "converting property to the other person's own use," the word "use" is employed as a noun. *Merriam-Webster's Collegiate Dictionary* identifies many different definitions and senses of the word "use" as a noun, including the following most relevant within the context of MCL 600.2919a(1)(a):

> **1 a :** the act or practice of employing something **:** EMPLOYMENT, APPLICATION <he made good ~ of his spare time> **b :** the fact or state of being used <a dish in daily ~> . . . **2 a** (1) : habitual or customary usage (2) : an individual habit or group custom[.][53]

Columbian proffered, and the circuit court adopted, a narrow definition of "use" focused on the intended purpose of the converted property, such as the definition of the word as "habitual or customary usage" quoted above. Under this definition, to convert Aroma's wine to Columbian's "own use" means that "one would have to drink it or perhaps sell it."

In reversing the circuit court's decision, the Court of Appeals held that "the definition of 'use' encompasses a much broader meaning" than the circuit court's definition allows.[54] Under the Court of Appeals' preferred definition, "use" "requires

---

[52] A study by Dictionaries of the Oxford English Corpus found that the word "use" is the 83d most frequently used word in the English language. See Oxford Dictionaries, *The OEC: Facts about the language*, available at <http://www.oxforddictionaries.com/words/the-oec-facts-about-the-language> (accessed June 12, 2015) [http://perma.cc/BDP4-2UB5].

[53] *Merriam-Webster's Collegiate Dictionary* (2014).

[54] *Aroma Wines*, 303 Mich App at 448.

only that a person 'employ for some purpose . . . .' "[55] As a result, converting to the other person's "own use" means merely that a defendant "employ[s]" another person's property for any purpose, as long as it is "to [the defendant's] own purposes."[56]

The Court of Appeals thus implicitly acknowledged the placement of the word "use" within MCL 600.2919a(1)(a). In particular, the word "own" modifies "use," suggesting that any use of the converted property must be intentionally geared toward a purpose personal to the person converting the property. When examining the phrase "own use" in this light, it becomes clear that the Legislature did not seek to restrict the application of MCL 600.2919a(1)(a) on the basis of the intended or common purpose of the converted property. Rather, the only restriction to the application of MCL 600.2919a(1)(a) to a common-law conversion offense is that it must be used for a purpose personal to the converter. Therefore, we agree with the Court of Appeals' definition of "use" and hold that conversion "to the other person's own use" requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose.

This broad definition of "own use" finds support in our early conversion caselaw. As explained earlier, in *Kreiter*, this Court held that conversion to someone's own use need not be geared toward the intended purpose of the converted property and held that a converter of beer was liable regardless of whether he or she "destroyed [it] from a belief

---

[55] *Id*.

[56] *Id*.

22

in its deleterious effects, or made way with [it] in carousals or private drinking."[57] Similarly, our precedent also illustrates that not every common-law conversion is to the converter's "own use," and therefore that additional language is not surplusage. For instance, this Court has also held that, leaving aside any potential governmental immunity defenses, a sheriff or court officer is liable for conversion if he or she unlawfully seizes personal property pursuant to a court order.[58] While the sheriff has converted that property, the sheriff has not converted the property to his or her "own use" within the meaning of MCL 600.2919a(1)(a).

Accordingly, we agree with the Court of Appeals that someone alleging conversion to the defendant's "own use" under MCL 600.2919a(1)(a) must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose. We now turn to the specific evidence presented in this case to determine whether Columbian is entitled to a directed verdict on Aroma's statutory conversion claim.

## IV. APPLICATION

In determining whether the circuit court properly granted Columbian's motion for a directed verdict on Aroma's statutory conversion claim, we reiterate that we are not making any factual determinations, only whether sufficient evidence has been presented

---

[57] *Kreiter*, 28 Mich at 498-499.

[58] *Kenney*, 96 Mich at 618.

23

for the fact-finder—in this case, the jury—to conclude that Columbian converted Aroma's wine to its "own use," that is, for some purpose personal to Columbian.[59]

Under this standard, our application of MCL 600.2919a(1)(a) is straightforward. Whether Columbian committed a *common-law* conversion is not at issue here, for the jury has already decided that question against Columbian. In arguing that it did not commit *statutory* conversion, Columbian claims that it moved the wine from its temperature-controlled storage area to complete a renovation project at its warehouse. Even considering just this admission, we agree with the Court of Appeals that a jury could consider "the act of moving plaintiff's wine contrary to the contract in order to undertake an expansion project to benefit itself" to be "an act of employing the wine to [Columbian's] own purposes constituting 'use' of the wine."[60]

Moreover, Aroma proffered various e-mails between its owner and Columbian's employees to support its claim that Columbian limited Aroma's access to its wine during a period when Columbian declared Aroma's account to be delinquent. Furthermore, the Court of Appeals also observed that Aroma proffered evidence that, if believed, would allow a jury to conclude that Columbian "filled the temperature-controlled storage space . . . with other customers' products."[61] As a result,

---

[59] *Krohn*, 490 Mich at 155, citing *Sniecinski*, 469 Mich at 131.

[60] *Aroma Wines*, 303 Mich App at 448-449.

[61] *Id*. at 448.

24

[i]f a jury believed the evidence showing that defendant moved plaintiff's wine for its own purposes—whether it be to sell the space to other customers or complete a construction project—or that it used the wine as leverage against plaintiff, it could have determined that defendant converted the wine to its own use.[62]

Therefore, we affirm the Court of Appeals' conclusion that the circuit court erred when it granted Columbian's motion for a directed verdict on Aroma's statutory conversion claim. Aroma presented evidence during its case-in-chief that would allow a jury to find that Columbian converted Aroma's property to its own use within the meaning of MCL 600.2919a(1)(a). As a result, Columbian is not entitled to a directed verdict on Aroma's statutory conversion claim.

V. CONCLUSION

Although its language is rooted in common-law conversion, the tort established in MCL 600.2919a(1)(a) is not the same as common-law conversion. Rather, the separate statutory cause of action for conversion "to the other person's own use" requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose. Aroma has alleged facts that, if believed by a jury, would indicate Columbian's conversion of Aroma's wine for its own purposes. Therefore, we affirm the Court of

---

[62] *Id*. at 449.

25

Appeals' conclusion that Columbian is not entitled to a directed verdict on Aroma's statutory conversion claim and remand this case to the Kent Circuit Court for further proceedings consistent with this opinion.

Mary Beth Kelly
Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

26