*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GARCO GASKETS, INC.,

Plaintiff-Appellant,

v

HUNTINGTON NATIONAL BANK,

Defendant-Appellee.

UNPUBLISHED
October 11, 2024
2:15 PM

No. 366993
Wayne Circuit Court
LC No. 22-000097-CB

Before: BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

PER CURIAM.

In this action alleging statutory conversion and breach of contract, plaintiff, Garco Gaskets, Inc. (Garco) appeals by right the order granting summary disposition in favor of defendant, Huntington National Bank (Huntington), under MCR 2.116(C)(10). We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

This case arises out of a series of fraudulent transactions that debited funds from Garco's commercial bank account at Huntington. When the fraudulent transactions took place, several documents governed the parties' relationship, including Garco's corporate resolution to open and maintain a bank account at Huntington and an authorization and agreement for Garco to receive Huntington's treasury management services. In December 2020, an unknown entity initiated multiple Automated Clearing House (ACH) transactions[1] that debited a total of $159,659 from Garco's account. Garco reported the fraudulent transactions to Huntington and the Livonia Police Department. Huntington recovered $90,782 and returned those funds to Garco but maintained that it was not able to recover the remaining $68,877. Garco disputed Huntington's claim regarding

---

[1] An ACH transaction "is an electronic money transfer made between banks and credit unions across a network called the Automated Clearing House . . . ." Consumer Financial Protection Bureau, *What is an ACH transaction?* <https://www.consumerfinance.gov/ask-cfpb/what-is-an-ach-transaction-en-1065/> (accessed September 26, 2024).

the remaining $68,877. It alleged that Huntington recovered and wrongfully retained at least a portion of that amount.

The dispute regarding the remaining $68,877 and what portion of it, if any, Huntington recovered stems from differing accounts from Huntington employees and the convoluted manner in which Garco's accounts received provisional credits following the fraudulent transfers. On one hand, the Livonia Police Department concluded that Huntington recovered $46,929 of the $68,877. Detective Cameron Koss—the Livonia Police Department detective tasked with investigating the fraudulent transfers—concluded that fraudulent transfers occurred and that the bank recovered a portion of the transferred funds. Specifically, he concluded that Huntington recovered $137,711 of the $159,659 fraudulently debited from Garco's account. Koss further concluded that of the $137,711 recovered, Huntington returned $90,782 to Garco but retained the remaining $46,929. In reaching this conclusion, Koss relied on records he obtained from Huntington and information Huntington employees provided to help him decipher the records.

Critically, Koss relied on statements from Samantha Webb—an employee within Huntington's anti-money laundering department who served as Koss's liaison with Huntington. According to Koss, Webb contacted him after he spoke with several other Huntington employees who were unable to (or did not) answer his inquiries. Webb informed Koss by telephone that Huntington recovered $46,929 of the $68,877. She later sent a follow-up e-mail to Koss, on which Garco relied in this case:

> On the dates of 12/15/2020 and 12/17/2020 there were 22 unauthorized outgoing Automated Clearing House (ACH) transfer of funds from account . . . titled to [Garco], with IP addresses of 96.56.234.74 (out of New [J]ersey) and 162.208.72.42 (out of New York), totaling $159,659.00 to payees of American Express and Meta Bank . . . by the authorized user Marla Arslanian (Arslanian) stated that she never processed the transactions and notified [Huntington]. $90,782.00 was credited back to the customer's account by Meta Bank. On 12/18/2020 $68,877.00 was credited back to [the account], however due to lack of funds $46,929.00 was debited back to the initial financial institution causing a loss of $21,948.00.

The last sentence of the email is open to different interpretations or inferences. But Koss understood Webb to have identified $21,948 "as the loss." In other words, as Koss indicated at his deposition, Huntington recovered $46,929.[2]

Other Huntington employees disputed this conclusion. Most notably, Steven Gray—Senior Vice President and Treasury Management Operations Director for Huntington—disagreed with Webb's conclusion. According to Gray, by reviewing the transactions posted to Garco's account, and "by researching what came into [Huntington's] system and by researching all of the transactions," he disagreed with Webb's position that Huntington recovered $46,929. He

---

[2] Alternatively, if indeed $46,929 of the $68,877 was "debited back to the initial financial institution," then arguably the "loss" may have been $46,929.

explained that Huntington executed a series of transactions in which it credited Garco's account for $90,782 in recovered funds and debited Garco's account for $159,659 in provisional credits it posted for Garco's benefit. Huntington carried out the debits to Garco's account in two separate transactions—the first debited $46,929, and the second debited $112,730. Gray also testified that he "can't speak on behalf of Samantha [Webb]." He further testified that he assumed based on her title that she might not have access to the same information as other employees. He stated, "I think when I saw her title, she was maybe in the AML [anti-money laundering] BSA [Bank Secrecy Act] space, so she wouldn't be familiar and she would not have all the tools available to her to, you know, know all of the facts of the transaction." Put simply, unlike Webb, Gray disputed that Huntington recovered any of the $68,877.

It was on this basis that Huntington denied Garco's claim to recover that amount. Garco filed a claim with Huntington to recover its loss. In the denial letter, Huntington employee Dana Farthing, explained:

> With regard to the $68,877 transfer that occurred on December 15th, after we were notified of the unauthorized transactions, a reversal of the entire ACH file was processed. This is the provisional credit of $68,877 that is reflected on the customer's statement. ACH reversals under [National Automated Clearing House Association] NACHA are generally limited to reversing erroneous files. However, in this case, even though these ACH items did not constitute erroneous files, we nonetheless processed the reversals. The receiving bank can either accept or reject the reversal. Unfortunately, the reversals were rejected by the receiving banks, which was processed as return debits on December 21, 2020 for $46,929 and on December 23, 2020 for $21,948, as part of the ACH returns totaling $112,730.00. Included with ACH returns of $112,730 was a reversal of $90,782.00 to offset the previous double crediting of that amount. Therefore, for the $68,877 transfer, there were no recoveries received.

In other words, different from Webb's account, but consistent with Gray's, Farthing denied that Huntington recovered any of the $68,877. The records from Garco's account show provisional credits, followed by actual (or permanent) credits and debits to Garco's account.

In January 2022, Garco filed suit against Huntington seeking damages for alleged breach of contract and statutory conversion. After discovery closed, Huntington moved for summary disposition under MCR 2.116(C)(8) and (10). It argued that Garco's breach-of-contract claims failed as a matter of law because Garco assumed liability for the loss, and Garco failed to present any evidence that Huntington breached the parties' contracts. Huntington also argued that Garco's statutory-conversion claim failed as a matter of law because Garco failed to present any evidence that Huntington wrongfully retained Garco's funds. In response, Garco argued that a Huntington representative acknowledged that Huntington recovered all but $21,948 of the funds fraudulently debited from Garco's account. Garco claimed that Huntington breached the parties' contracts and committed statutory conversion by refusing to return the additional $46,929 it recovered on Garco's behalf. Garco also moved for leave to file an amended complaint setting forth an additional breach-of-contract claim based on alleged Uniform Commercial Code (UCC) violations.

After a hearing, the trial court concluded that summary disposition was warranted under MCR 2.116(C)(10) because Garco failed to identify any contractual provision that Huntington breached and failed to proffer any evidence that Huntington recovered Garco's funds and converted them to its own use. The trial court then entered a written order granting Huntington's summary disposition motion.[3] The order provided that the trial court's holding rendered moot Garco's motion for leave to file an amended complaint. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. When considering such a motion, the trial court must view all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. The trial court may only grant a motion under MCR 2.116(C)(10) if there is no genuine issue of material fact. *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. *Id*.

This Court also reviews de novo questions involving the proper interpretation and legal effect of a contract. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). And this Court reviews de novo questions of statutory interpretation, construction, and application. *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019).

## III. BREACH OF CONTRACT

Garco argues that the trial court erred by granting Huntington's summary disposition motion and dismissing its breach-of-contract claim under MCR 2.116(C)(10). Garco arguably abandoned this claim by providing a cursory analysis with little citation to supporting authority. Regardless, the trial court did not err by granting Huntington's summary disposition motion and dismissing its breach-of-contract claim under MCR 2.116(C)(10).

To prevail on a breach-of-contract claim, the plaintiff must establish by a preponderance of the evidence that (1) a contract existed between the parties, (2) the opposing party breached the contract, and (3) the breach caused the plaintiff to incur damages. *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). In its appellate brief, Garco asserts that Huntington breached the parties' contract, thereby causing Garco to incur $46,929 in

---

[3] The trial court's statements on the record suggest that it granted Huntington's summary disposition motion under MCR 2.116(C)(10) alone. Yet, "a court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). In its written order, the trial court stated that it granted Huntington's motion "for the reasons stated in its brief and on the record." Because Huntington moved for summary disposition under MCR 2.116(C)(8) and (10), the trial court's written order suggests that it granted Huntington's motion on both bases. Nevertheless, we construe the trial court's ruling as falling under MCR 2.116(C)(10) because it considered documentary evidence beyond the pleadings. See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

damages. Yet, Garco does not identify the contract clauses Huntington allegedly breached or provide caselaw in support of its argument. Instead, Garco suggests that there is "no need for a tedious recitation of contract law," and states only that Huntington undoubtedly breached the parties' contract by retaining Garco's funds.

This Court has "held repeatedly that appellants may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims; nor may they give issues cursory treatment with little or no citation of supporting authority." *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008). Indeed, an appellant's "failure to properly address the merits of [an] assertion of error constitutes abandonment of the issue on appeal." *Id*. Because Garco provided a cursory analysis of this issue with little citation to supporting authority, it arguably abandoned this issue on appeal.

Regarding the merits, the trial court did not err by granting Huntington's summary disposition motion and dismissing its common-law breach-of-contract claim under MCR 2.116(C)(10) because Garco failed to establish a genuine issue of material fact as to whether there was a breach of contractual duty. In response to Huntington's summary disposition motion, Garco proffered two documents that Huntington purportedly breached. The first document was Garco's corporate resolution to open and maintain a bank account at Huntington. The corporate resolution addressed Huntington's designation as Garco's bank and the individuals authorized to transact on Garco's behalf. The second document was an authorization and agreement for Garco's receipt of Huntington's treasury management services. The authorization incorporated by reference a separate treasury management services agreement and provided that Garco declined to implement Huntington's recommended dual-authorization security procedure for ACH transactions. Neither document addressed Huntington's obligations in the event of one or more unauthorized transactions debiting funds from Garco's account. And Garco failed to identify any provision of the separate treasury management services agreement that it claims Huntington breached. Garco, therefore, failed to establish a genuine issue of material fact as to whether Huntington breached any of the parties' alleged contracts. The trial court accordingly did not err by granting Huntington's summary disposition motion and dismissing its breach-of-contract claim under MCR 2.116(C)(10).

## IV. CONVERSION

Garco argues that the trial court erred by granting Huntington's summary disposition motion and dismissing its statutory-conversion claim under MCR 2.116(C)(10). We agree because a genuine issue of material fact remains as to whether Huntington recovered any of the $68,877. A jury may ultimately credit Gray's testimony over Detective Koss's, or believe the account in Farthing's letter over the account in Webb's. But for the purposes of a motion for summary disposition under MCR 2.116(C)(10), the trial court was required to view this conflicting evidence in the light most favorable to the nonmovant: Garco. See *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016).

Common-law conversion is defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015) (quotation marks and citation omitted). Statutory conversion is governed by MCL 600.2919a(1)(a), which

permits a plaintiff to recover treble damages if, in addition to establishing the elements of common-law conversion, they establish that the defendant converted the plaintiff's personal property to their own use. *Aroma Wines & Equip, Inc*, 497 Mich at 355-356. A defendant converts personal property to their own use if they "employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id*. at 359. Statutory conversion may consist of knowingly buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property. *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111; 593 NW2d 595 (1999), citing MCL 600.2919a.

This issue boils down to a simple question: Did Huntington recover any of the remaining $68,877? Applying the appropriate standard, and drawing reasonable inferences in favor of the nonmovant, Garco, the answer to this question is unclear.

In support of its statutory-conversion claim, Garco proffered evidence regarding the Livonia Police Department's investigation of the fraudulent transactions. Specifically, Garco presented Detective Koss's case report and deposition transcript. Based in part on his correspondence with Huntington personnel, Detective Koss concluded that Huntington recovered $137,711 of the $159,659 fraudulently debited from Garco's account. Detective Koss further concluded that Huntington returned $90,782 to Garco but retained the remaining $46,929 in recovered funds. These conclusions were not speculative or without foundation. Rather, they relied on Koss's review of records obtained from Huntington and statements from Webb, an employee within Huntington's anti-money laundering department responsible for providing information to Livonia Police.

In opposition to Garco's statutory-conversion claim, Huntington proffered evidence regarding its internal investigation and external correspondence about the fraudulent transactions. Specifically, Huntington presented Gray's interrogatory responses and affidavit. Gray attested that shortly after $159,659 was fraudulently debited from Garco's account, Huntington attempted to reverse the transactions by notifying the banks in receipt of the funds. During this process, Huntington issued provisional credits to Garco's account totaling $159,659. Huntington ultimately recovered only $90,782 of the $159,659 fraudulently debited from Garco's account. Huntington then executed a series of transactions in which it credited Garco's account for $90,782 in recovered funds and debited Garco's account for $159,659 in provisional credits. Huntington carried out the debits to Garco's account in two separate transactions—the first debited $46,929, and the second debited $112,730. In other words, according to Huntington, it never successfully recovered any of the $68,877, and the $46,929 was only a portion of the provisional credits ultimately debited from Garco's account.

This directly conflicts with statements Webb made to Detective Koss on Huntington's behalf. During her phone call and follow-up e-mail, Webb appeared to indicate that Huntington recovered $46,929 (or possibly $21,948). To the extent that her email is open to various interpretations, the trial court should have viewed the evidence in the light most favorable to Garco.

In light of this evidence, Garco established a genuine issue of material fact as to whether Huntington retained and possibly thus converted a portion of the funds fraudulently debited from Garco's account to its own use. Detective Koss investigated the fraudulent transactions and concluded that Huntington retained $46,929 in recovered funds. On the other hand, Gray attested

that Huntington recovered only $90,782 of the funds fraudulently debited from Garco's account and returned that sum to Garco. "A court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks, citation, and emphasis omitted). Because there was conflicting evidence regarding Huntington's retention of funds fraudulently debited from Garco's account, the trial court erred, on the current record, by granting summary disposition in favor of Huntington with respect to Garco's statutory-conversion claim.

## V. UCC

Garco argues that the trial court erred by granting Huntington's summary disposition motion because it established a genuine issue of material fact as to whether it was entitled to relief under the UCC. We disagree. Because Garco never successfully amended its complaint, this question is not properly before us.

"Michigan has adopted the UCC, MCL 440.1101 *et seq.*" *Challenge MFG Co, LLC v MetoKote Corp*, 345 Mich App 338, 345; 5 NW3d 83 (2023). UCC Article 4a governs transactions carried out by way of a specialized payment method referred to as a funds transfer. See MCL 440.4602. See also UCC § 4A-102, official comment.[4] UCC Article 4a establishes detailed rules that assign responsibility, define behavioral norms, allocate risk, and establish limits on liability among individuals and entities that engage in funds transfers. See MCL 440.4602. See also UCC § 4A-102, official comment. Consequently, resorting to principles of law outside of Article 4a "is not appropriate to create rights, duties and liabilities inconsistent with those stated in [the] Article." UCC § 4A-102, official comment.

Here, Garco failed to plead an independent cause of action under Michigan's UCC Article 4a. Instead, after Huntington moved for summary disposition, Garco moved for leave to file an amended complaint raising an additional breach-of-contract claim based on alleged UCC violations. But the trial court declined to address the merits of Garco's motion for leave to file an amended complaint or its proposed UCC claim because it concluded that its summary disposition order rendered the motion moot. As an error-correcting court, our review is generally limited to matters actually decided by the lower court. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018). We therefore decline to address the merits of Garco's proposed UCC claim in the first instance. Garco does not challenge on appeal the trial court's denial of its motion for leave to file an amended complaint as moot. Yet, because we affirm the trial court's summary disposition order only in part, we recognize that mootness is no longer an appropriate basis on which to deny Garco's motion for leave to file an amended complaint because it is possible for the trial court to grant Garco's requested relief on remand. See *Duckett v Solky*, 341 Mich App 706, 991 NW2d 852 (2022) ("An issue is rendered moot when an event

---

[4] Although official comments to the UCC do not have the force of law, they are useful aids to the interpretation and construction of the UCC. *Prime Financial Servs LLC v Vinton*, 279 Mich App 245, 260 n 6; 761 NW2d 694 (2008). "Therefore, it is appropriate for this Court to consider the official comments when interpreting Michigan's UCC." *Id.*

has occurred that renders it impossible for the court to grant relief.") (quotation marks and citation omitted). In sum, because we reverse the trial court's disposal of Garco's conversion claim, it may additionally address on remand the merits of Garco's motion for leave to file an amended complaint.[5]

## VI. CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Noah P. Hood

---

[5] We observe that Garco did not attach its proposed amended complaint as an exhibit to its motion for leave to file an amended complaint. See MCR 2.118(A)(4) ("Amendments must be filed in writing, dated, and numbered consecutively . . ."). Huntington may raise this issue before the trial court.