# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

DEPARTMENT OF HEALTH AND HUMAN SERVICES v NRK RX, INC

Docket No. 167917. Argued January 21, 2026 (Calendar No. 1). Decided June 8, 2026.

The Department of Health and Human Services (DHHS)—represented by the Attorney General—filed a five-count civil action in the Ingham Circuit Court against NRK RX, Inc., and Raad Kouza, alleging, among other things, that defendants tortiously converted overpaid Medicaid funds. Defendants operated a pharmacy enrolled with DHHS to provide services to eligible Medicaid beneficiaries. Under this arrangement, NRK purchased various medications for these beneficiaries and then billed Medicaid to recover the costs associated with the purchases. DHHS, as administrator of Michigan's Medicaid program, was responsible for overseeing NRK's Medicaid-related billing. DHHS audited NRK's Medicaid claims and concluded that between 2011 and 2016, NRK billed Medicaid for a higher quantity of drugs than NRK's wholesaler sales records supported. NRK challenged this determination before an administrative law judge (ALJ), who upheld the overpayment amount and recommended that DHHS affirm its decision to recover the overpayments. DHHS adopted the ALJ's recommendation and issued a final order to collect the alleged overpayment from NRK. Several unsuccessful challenges to DHHS's final order followed. In 2022, DHHS filed its complaint, seeking enforcement of DHHS's final order and alleging that defendants' failure to repay the alleged overpayment constituted common-law and statutory conversion; the complaint further alleged breach of contract and unjust enrichment. Defendants moved to change venue from Ingham County to Wayne County, arguing that the tort venue provisions—MCL 600.1629 and MCL 600.1641(2)—controlled venue in this case rather than the Attorney General venue provisions—MCL 14.102 and MCL 600.1631(a)—because tort allegations were part of the pleadings. Defendants further contended that Wayne County was the most appropriate venue under these provisions because that is where Kouza resided and where the cause of action arose. The trial court, James S. Jamo, J., granted defendants' motion in part and transferred the case to the Oakland Circuit Court instead of the Wayne Circuit Court based on its determination that the original injury occurred in Oakland County, where NRK had its registered office and, accordingly, where defendants refused to return the sought electronic funds. DHHS appealed, and the Court of Appeals, RIORDAN, P.J., and O'BRIEN, J. (N. P. HOOD, J., dissenting), affirmed, holding that the tort venue statutes controlled over the Attorney General statutes by way of MCL 600.1641(2) and that venue was proper in Oakland County. ___ Mich App ___ (2024). DHHS sought leave to appeal in the Supreme Court, and the Supreme Court granted the application. ___ Mich ___ (2025).

In an opinion by Chief Justice CAVANAGH, joined in full by Justices BERNSTEIN and BOLDEN, joined by Justices ZAHRA and THOMAS as to Part III(A) only, and joined by Justice WELCH as to Part III(B) only, the Supreme Court *held*:

The Court of Appeals correctly held that MCL 600.1629(1) controls the venue determination in this case, but the Court of Appeals erred by holding that venue was proper in Oakland County under that provision; venue was proper in Ingham County because Ingham County was the situs of the original injury and where DHHS resides, has a place of business, or conducts business.

1. Venue concerns the appropriate forum in which to bring and try a case, and this inquiry is controlled by statute in Michigan. This case required analysis of the proper relationship between the Attorney General venue statutes—MCL 14.102 and MCL 600.1631(a)—and the tort venue statutes—MCL 600.1641(2) and MCL 600.1629—as applied to this action. MCL 14.102 states, in pertinent part, that any action at law brought by the Attorney General in the name of the state or of the people of the state, for the use and benefit thereof, may be begun in the circuit court in and for the county of Ingham, and may be prosecuted to final judgment and satisfaction thereof, with like effect as though the cause of action arose in such county. MCL 600.1631(a) similarly provides that the county in which the seat of state government is located—i.e., Ingham County— is a proper county for the Attorney General to bring suit. Both Attorney General statutes use permissive rather than mandatory language. MCL 14.102 states that the Attorney General "may" bring certain cases in Ingham County, and MCL 600.1631(a) designates Ingham County as "*a* proper county"—not *the* proper county. Accordingly, the Attorney General venue statutes do not require venue to be placed in Ingham County.

Turning to the tort venue statutes, each subsection of MCL 600.1629 includes substantially the same indefinite, permissive "a" county language employed in MCL 600.1631(a); however, MCL 600.1641(2) provides that if more than one cause of action is pleaded in the complaint or added by amendment at any time during the action and one of the causes of action is based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, venue *shall* be determined under the rules applicable to actions in tort as provided in MCL 600.1629. The use of "shall" in this provision makes it a mandatory provision that demands the application of MCL 600.1629 over the permissive Attorney General venue statutes in this case. Because DHHS pleaded more than one cause of action in its complaint and one of the causes of action was based on tort, MCL 600.1641(2) applies here. Accordingly, the Court of Appeals correctly determined that MCL 600.1641(2) compelled the application of MCL 600.1629 in this case.

2. Under the tort venue rules set forth in MCL 600.1629, MCL 600.1629(1)(a) and (b) require a determination of the county in which the original injury occurred. The history of the relevant language in MCL 600.1629(1) informs its current meaning. MCL 600.1629 was amended in 1995 to replace the phrase "[a] county in which all or part of the cause of action arose" with the current phrase "[t]he county in which the original injury occurred." This amendment considerably limited the county in which a cause of action can be brought—the amended statute requires that courts look to the first injury resulting from an act or omission of a defendant to determine where venue is proper. In this case, DHHS alleged that defendants committed common-law and statutory

conversion by failing to return Medicaid overpayments. Because the operative inquiry was the location where DHHS suffered the first actual injury resulting from defendants' act or omission—and not the location of the actions causing the injury—DHHS suffered its first actual injury in Ingham County, where DHHS has its headquarters and administers all relevant portions of the Medicaid program. Accordingly, the county in which the original injury occurred was Ingham County, and because that is where DHHS resides, has a place of business, or conducts business, venue was proper in Ingham County under MCL 600.1629(1)(b)(*i*).

Court of Appeals' judgment affirmed in part and reversed in part; case remanded to the Oakland Circuit Court for entry of an order changing venue to the Ingham Circuit Court.

Justice WELCH, concurring in part and dissenting in part, agreed with the majority's analysis of venue under MCL 600.1629 and with the majority's conclusion that venue was proper in Ingham County under MCL 600.1629, but she disagreed with the majority's conclusion that MCL 600.1629 abrogates the Attorney General's authority to file an action in Ingham County pursuant to MCL 14.102 and MCL 600.1631. Justice WELCH believed that context, history, and statutory interpretation principles demonstrate that MCL 600.1641(2) does not abrogate the Attorney General's ability to file a multicount lawsuit that includes tort claims in Ingham County and that the venue provisions could be harmonized so as not to diminish the authority granted to the Attorney General. She would have held that the Attorney General venue statutes are permissive or discretionary venue statutes that allow the Attorney General to file cases in Ingham County should the Attorney General choose to file there, but that if the Attorney General does not choose to file in Ingham County, then venue would be determined under the generally applicable venue statutes that apply to every other litigant—including MCL 600.1641(2).

Justice THOMAS, joined by Justice ZAHRA, concurring in part and dissenting in part, agreed with the majority that MCL 600.1629 and MCL 600.1641(2) exclusively govern where venue is proper in this matter because DHHS pleaded a complaint with more than one count and with at least one of those counts sounding in tort and that this displaces the venue provisions specific to the Attorney General as found in MCL 14.102 and MCL 600.1631(a). However, Justice THOMAS dissented from the majority with respect to its application of the law in holding that Ingham County was the proper venue. She would have held that the original injury establishing venue under MCL 600.1629(1) occurred in Oakland County, not Ingham County, because for purposes of MCL 600.1629(1)(a), the original injury of a conversion claim is completed when the defendant wrongfully retained the property. Accordingly, she would have held that venue is proper where the act of dominion occurred and deprived the plaintiff of their control over the property, and in this case, that location was Oakland County, where the funds were located when defendants refused to return them.

Justice HOOD did not participate because he was on the Court of Appeals panel that issued the decision under review.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED June 8, 2026

STATE OF MICHIGAN

SUPREME COURT

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

      Plaintiff-Appellant,

v

No. 167917

NRK RX, INC., and RAAD KOUZA,

      Defendants-Appellees.

BEFORE THE ENTIRE BENCH (except HOOD, J.)

CAVANAGH, C.J.

In this interlocutory appeal, we consider the proper venue for a civil action brought by the Attorney General on behalf of a state agency when the underlying complaint pleads multiple causes of action, including at least one tort. Plaintiff, Michigan Department of Health and Human Services (DHHS), specifically alleges, among other things, that defendants tortiously converted overpaid Medicaid funds. We agree with the Court of Appeals that MCL 600.1629 controls this analysis because DHHS pleaded "more than 1

cause of action" in its complaint "and 1 of the causes of action is based on tort . . . ." MCL 600.1641(2). In such cases, the Legislature has commanded that "venue *shall be* determined under the rules applicable to actions in tort as provided in section 1629." *Id.* (emphasis added). We therefore conclude that this mandatory provision requires venue to be determined under MCL 600.1629 when, as here, a state agency represented by the Attorney General files a multiclaim civil action that includes a tort.

But we part ways with the panel as to the proper venue under MCL 600.1629. The Court of Appeals held that Oakland County is where the "original injury" occurred for purposes of MCL 600.1629 because that is where defendants allegedly converted the Medicaid overpayments. The panel erred in so holding because both the plain language of MCL 600.1629 and our caselaw interpreting it establish that the "original injury" is where the *plaintiff* suffered its first actual injury, not where the *defendant* was located when the alleged wrongdoing occurred. And in this case, DHHS's original injury occurred in Ingham County, where it was allegedly deprived of possession and control over the electronic funds in question. Accordingly, we reverse the decision of the Court of Appeals on this issue and remand this case to the Oakland Circuit Court for entry of an order changing venue to the Ingham Circuit Court.

## I. FACTS AND PROCEEDINGS

This case concerns DHHS's efforts to collect alleged Medicaid overpayments made to defendants between 2011 and 2016. Defendant NRK RX, Inc., allegedly owned by codefendant Raad Kouza, operated a pharmacy enrolled with DHHS to provide services to eligible Medicaid beneficiaries. Under this arrangement, NRK purchased various

2

medications for these beneficiaries and then billed Medicaid to recover the costs associated with the purchases. DHHS, as administrator of Michigan's Medicaid program, was responsible for overseeing NRK's Medicaid-related billing.

In 2016, DHHS's Office of Inspector General (OIG) launched an audit of the Medicaid claims submitted by NRK. The OIG concluded that NRK billed Medicaid for a higher quantity of drugs than NRK's wholesaler sales records supported. The OIG initially found an overpayment of $612,630.47 in electronic funds, but after further investigation, it reduced the final overpayment amount to $541,590.71. NRK challenged the OIG's determination before an administrative law judge (ALJ), who upheld the overpayment amount and recommended that DHHS affirm its decision to recover the overpayments. DHHS then adopted the ALJ's recommendation and issued a final order to collect the alleged $541,590.71 overpayment from NRK. Several unsuccessful challenges to DHHS's final order followed.[1]

In 2022, DHHS—represented by the Attorney General—filed the five-count civil action against defendants that underpins the present case.[2] DHHS filed this action in the Ingham Circuit Court pursuant to MCL 600.1631(a), which identifies the seat of state

---

[1] These unsuccessful challenges included a claim of appeal in the Ingham Circuit Court and a subsequent application for leave to appeal in the Court of Appeals. The Ingham Circuit Court upheld DHHS's final order, and the Court of Appeals granted leave and affirmed because defendants failed to file an exception to the ALJ's proposal for decision. *Food Town Drugs v Dep't of Health & Human Servs*, unpublished per curiam opinion of the Court of Appeals, issued August 11, 2022 (Docket No. 356651).

[2] See MCL 400.111c(1)(c)(*vi*) (providing that the DHHS "director shall request the attorney general to petition a court of competent jurisdiction to enforce the order" if the provider does not "timely comply" with it).

government as "a proper county" when the Attorney General brings suit in the name of the state.[3] The complaint sought enforcement of DHHS's final order and asserted that defendants' failure to repay the alleged overpayment constituted both common-law and statutory conversion. The complaint also alleged breach of contract and unjust enrichment. In all, DHHS sought treble damages of more than $1.6 million or, in the alternative, a money judgment against defendants limited to the alleged $541,590.71 overpayment.

Alongside their answer to the complaint, defendants moved to change venue from Ingham County to Wayne County. Defendants argued that the tort venue provisions— MCL 600.1629 and MCL 600.1641(2)—control venue in this case, not MCL 600.1631(a), because tort allegations were part of the pleadings. Defendants further contended that Wayne County was the most appropriate venue under these provisions because that is where Kouza resided and where the cause of action arose. DHHS disagreed, maintaining that the tort venue statutes are inapplicable and that venue was properly laid in Ingham County under MCL 600.1631(a). DHHS argued in the alternative that, even if the tort venue statutes control, the original injury occurred in Ingham County because that is the county in which DHHS was located when it lost possession of the funds in question. The trial court granted in part defendants' motion, transferring the case to the Oakland Circuit Court instead of the Wayne Circuit Court based on its determination that the original injury occurred in Oakland County, where NRK had its registered office and thus where defendants refused to return the sought electronic funds.

---

[3] Although the named plaintiff in this action is technically DHHS's OIG, we use "DHHS" throughout this opinion for the sake of simplicity.

4

DHHS appealed the trial court's venue decision, and the Court of Appeals affirmed in a published opinion authored by Judge RIORDAN and joined by Judge O'BRIEN.[4] The majority held that the tort venue provisions control over the permissive Attorney General (AG) venue provisions by way of MCL 600.1641(2), which provides that venue "shall be determined" under MCL 600.1629 when, as here, more than one cause of action is pleaded in the complaint and one of those causes of action sounds in tort. *Dep't of Health & Human Servs v NRK RX, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (November 20, 2024) (Docket No. 364206); slip op at 8. And under MCL 600.1629, the Court held that venue is proper in Oakland County because that is both where the "original injury" occurred and where NRK's corporate registered office was located. *Id*. at ___; slip op at 6-7.

Then-Judge HOOD dissented. Although he agreed that Oakland County is *a* proper venue under the tort venue statutes, he concluded "that MCL 14.102 and MCL 600.1631 exist in harmony with MCL 600.1641 and MCL 600.1629, so that a party may properly establish venue under the AG venue statutes, MCL 14.102 and MCL 600.1631, *or* the tort venue statutes, MCL 600.1641 and MCL 600.1629." *Id*. at ___ (N. P. HOOD, J., dissenting); slip op at 1. Therefore, then-Judge HOOD would have remanded the case to the Ingham Circuit Court for it to determine whether transfer to the Oakland Circuit Court is warranted under MCR 2.222(A). *Id*. at ___; slip op at 7.

---

[4] The Court of Appeals initially denied DHHS's interlocutory application for leave to appeal. *Dep't of Health & Human Servs v NRK RX, Inc*, unpublished order of the Court of Appeals, entered June 13, 2023 (Docket No. 364206). DHHS then sought leave to appeal in our Court, and instead of granting leave to appeal, we remanded this case to the Court of Appeals for consideration as on leave granted. *Dep't of Health & Human Servs v NRK RX, Inc*, 513 Mich 853 (2023).

DHHS next sought leave to appeal in this Court. We granted DHHS's application and directed the parties to address the following issues:

> (1) the proper relationship between MCL 14.102, MCL 600.1631(a), MCL 600.1641(2), and MCL 600.1629 as applied to a civil action brought by the Department of Health and Human Services claiming statutory and common-law conversion; (2) if MCL 600.1629(1) controls, whether the Court of Appeals correctly determined that the original injury occurred in Oakland County; and (3) if MCL 14.102 and MCL 600.1631(a) control, whether these statutes apply only to actions in which the State of Michigan or the Attorney General is the named plaintiff or whether they also apply to an action brought by the Attorney General on behalf of a state department. [*Dep't of Health & Human Servs v NRK RX, Inc*, ___ Mich ___, ___; 20 NW3d 552 (2025).]

## II. STANDARD OF REVIEW AND PRINCIPLES OF INTERPRETATION

We review for clear error a trial court's ruling in response to a motion to change venue. *Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618, 624; 752 NW2d 37 (2008). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Massey v Mandell*, 462 Mich 375, 379; 614 NW2d 70 (2000).

This Court reviews de novo questions of statutory interpretation. *Dimmitt*, 481 Mich at 624. When analyzing statutory text, our "primary obligation is to discern legislative intent as reflected in the plain language of the statute." *Id*. We do so by construing all nontechnical words and phrases "according to the common and approved usage of the language[.]" MCL 8.3a. Moreover, a court may not read anything "into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *SBC Health Midwest, Inc v Kentwood*, 500 Mich 65, 72; 894 NW2d 535 (2017) (quotation marks and citation omitted). A necessary corollary of these rules is that a court must "avoid an interpretation that would render any part of the

6

statute surplusage or nugatory" if at all possible. *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

### III. VENUE UNDER MICHIGAN LAW

At issue is the proper venue for this multiclaim civil action brought by DHHS alleging, among other things, statutory and common-law conversion. Broadly speaking, venue concerns the appropriate forum to bring and try a case. *Gross v Gen Motors Corp*, 448 Mich 147, 156; 528 NW2d 707 (1995). Distinct from jurisdiction, which pertains to a court's *power* to adjudicate a case, venue simply aims to identify "a fair and convenient *location* where the merits of a dispute can be adjudicated." *Id*. (emphasis added). This inquiry is "controlled by statute" in Michigan. *Dimmitt*, 481 Mich at 624 ("The Legislature is properly imbued with the power to establish the venue for causes of action.").

### A. THE PERTINENT VENUE STATUTES

Because venue is a creature of statute under Michigan law, our first task is to determine which venue statute controls under the facts of this case. The parties point to different statutes in answering this threshold question. Therefore, we must analyze the proper relationship between the AG venue statutes on which DHHS relies—MCL 14.102 and MCL 600.1631(a)—and the tort venue statutes with which defendants counter—MCL 600.1641(2) and MCL 600.1629—as applied to this action. We address each set of statutes in turn, ultimately concluding that the Court of Appeals correctly held that the tort venue statutes control here.

7

## 1. THE AG VENUE STATUTES

Our analysis begins with the text of the AG venue provisions.[5]  MCL 14.102 states,

in pertinent part, the following:

> Any action at law brought by the attorney general in the name of the state or of the people of the state, for the use and benefit thereof, may be begun in the circuit court in and for the county of Ingham, and may be prosecuted to final judgment and satisfaction thereof, with like effect as though the cause of action arose in such county.

---

[5] Defendants argue—and the Court of Appeals majority agreed—that DHHS's arguments regarding MCL 600.1631(a) and MCL 14.102 are unpreserved for appellate review.  See *Napier v Jacobs*, 429 Mich 222, 227; 414 NW2d 862 (1987) ("A general rule of trial practice is that failure to timely raise an issue waives review of that issue on appeal.").  We disagree, at least in part.

To begin, the applicability of MCL 600.1631(a) was plainly raised and litigated in the trial court.  As dissenting Judge HOOD correctly explained, "DHHS asserted that MCL 600.1631 applied in its complaint, in its supplemental brief in opposition to defendants' motion to change venue, and during the hearing regarding defendants' motion to change venue." *NRK RX, Inc*, ___ Mich App at ___ (N. P. HOOD, J., dissenting); slip op at 3.  Defendants, recognizing that DHHS relied on MCL 600.1631(a), also discussed MCL 600.1631(a) in their motion to change venue and during the subsequent hearing on that motion.  Because the parties raised and litigated this statute in the lower courts, we discern no preservation issue regarding MCL 600.1631(a).

We do, however, agree with defendants and the Court of Appeals that DHHS failed to properly preserve its arguments regarding MCL 14.102.  DHHS concedes as much.  But "the preservation requirement is not an inflexible rule; it yields to the necessity of considering additional issues when necessary to a proper determination of a case." *Klooster v Charlevoix*, 488 Mich 289, 310; 795 NW2d 578 (2011) (quotation marks, citation, and ellipsis omitted).  Accordingly, we consider DHHS's arguments on MCL 14.102 because this provision contains virtually identical language as MCL 600.1631(a), the Court of Appeals addressed it in a published opinion, the parties fully briefed and argued its applicability in this Court, and doing so is necessary to a proper determination of venue in this case.

MCL 600.1631(a) similarly provides that the "county in which the seat of state government is located [i.e., Ingham County] is a proper county" for the Attorney General to bring suit "in the name of the state or of the people of the state for the use and benefit thereof[.]" Consequently, both statutes authorize the Attorney General to bring various civil actions in Ingham County.

Relevant here, both AG venue provisions use permissive rather than mandatory language. Start with MCL 14.102, which states that the Attorney General "may" bring certain cases in Ingham County. We have long recognized that "may" is best understood as a permissive term that imbues discretion. See, e.g., *People v Arnold*, 502 Mich 438, 466; 918 NW2d 164 (2018) ("It is well established that the use of the word 'may' is ordinarily permissive."); *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982) ("[C]ourts should give the ordinary and accepted meaning to . . . the permissive word 'may' . . . ."); *Smith v Sch Dist No 6*, 241 Mich 366, 369; 217 NW 15 (1928) ("By the use of the word 'may' in the first section, the legislature authorized and permitted the board of education to come under the provisions of the act if it so desired."). Because "may" is ordinarily permissive and MCL 14.102 contains no language suggesting otherwise, we conclude that this statute is a permissive venue provision.

The same holds true for MCL 600.1631(a). As noted above, this provision designates Ingham County as "*a* proper county"—not *the* proper county—for the Attorney General to file suit. MCL 600.1631(a) (emphasis added). "Traditionally in our law, to say nothing of our classrooms, we have recognized the difference between 'the' and 'a.'" *Paige v Sterling Hts*, 476 Mich 495, 507-508; 720 NW2d 219 (2006) (quotation marks and citation omitted). As an indefinite article, "a" has an "indefinite or generalizing force,"

9

while "the," a definite article, has "a specifying or particularizing effect." *Massey*, 462 Mich at 382 n 5 (quotation marks and citation omitted). Put more simply, when the Legislature uses "a" instead of "the," we presume that the object "a" modifies is not the *only* possible object. So by using the phrase "a proper county" in MCL 600.1631(a), the Legislature designated "Ingham County merely as *a* proper venue for actions commenced by the Attorney General"—not the *only* possible one. *Attorney General v Kent Co Rd Comm*, 184 Mich App 525, 528; 459 NW2d 11 (1990). Like its counterpart in MCL 14.102, then, MCL 600.1631(a) is also a permissive venue provision.

Accordingly, we conclude that the AG venue provisions do not *require* venue to be placed in Ingham County when the Attorney General brings suit in the name of the state or its people.

## 2. THE TORT VENUE STATUTES

We next consider the tort venue statutes. MCL 600.1629 provides the following hierarchy for determining venue in tort cases:

> (1) Subject to subsection (2), in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, all of the following apply:
>
> (a) The county in which the original injury occurred and in which either of the following applies is *a county* in which to file and try the action:
>
> (*i*) The defendant resides, has a place of business, or conducts business in that county.
>
> (*ii*) The corporate registered office of a defendant is located in that county.
>
> (b) If a county does not satisfy the criteria under subdivision (a), the county in which the original injury occurred and in which either of the following applies is *a county* in which to file and try the action:

10

(*i*) The plaintiff resides, has a place of business, or conducts business in that county.

(*ii*) The corporate registered office of a plaintiff is located in that county.

(c) If a county does not satisfy the criteria under subdivision (a) or (b), a county in which both of the following apply is *a county* in which to file and try the action:

(*i*) The plaintiff resides, has a place of business, or conducts business in that county, or has its corporate registered office located in that county.

(*ii*) The defendant resides, has a place of business, or conducts business in that county, or has its corporate registered office located in that county.

(d) If a county does not satisfy the criteria under subdivision (a), (b), or (c), a county that satisfies the criteria under section 1621 or 1627 is *a county* in which to file and try an action.

(2) Any party may file a motion to change venue based on hardship or inconvenience.

(3) For the purpose of this section only, in a product liability action, a defendant is considered to conduct business in a county in which the defendant's product is sold at retail. [Emphasis added.]

As emphasized above, each subsection of MCL 600.1629 includes substantially the same indefinite "a" county language employed in MCL 600.1631(a). So the tort venue hierarchy set forth in MCL 600.1629—standing alone—is likewise permissive. See *Paige*, 476 Mich at 507-508. Without something more, then, the permissive nature of both the AG venue statutes and MCL 600.1629 suggests that either could be applied when the Attorney General files a multiclaim complaint that includes a tort claim.

But that "something more" exists by way of MCL 600.1641(2). Located in the same chapter as both MCL 600.1629 and MCL 600.1631(a), this provision concerns venue for certain tort cases:

11

If more than 1 cause of action is pleaded in the complaint or added by amendment at any time during the action and 1 of the causes of action is based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, venue shall be determined under the rules applicable to actions in tort as provided in section 1629. [MCL 600.1641(2).]

The plain language of this provision evinces the Legislature's intent to "create[] a preference for § 1629" in certain cases where several permissive venue provisions could otherwise apply. *Massey*, 462 Mich at 389 (CORRIGAN, J., concurring). Because DHHS pleaded "more than 1 cause of action" in its complaint and "1 of the causes of action is based on tort," MCL 600.1641(2) applies here.

### 3. DISCUSSION

We agree with the Court of Appeals that MCL 600.1641(2) compels the application of MCL 600.1629 under these facts. Unlike the permissive venue provisions discussed earlier, MCL 600.1641(2) instructs that "venue *shall be* determined under the rules applicable to actions in tort *as provided in section 1629*" when "more than 1 cause of action is pleaded in the complaint . . . and 1 of the causes of action is based on tort . . . ." (Emphasis added.) The Legislature's use of the verb "shall" is significant because we have "long and consistently held that *shall* is a mandatory directive." *People v Posey*, 512 Mich 317, 350; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). See also *Browder*, 413 Mich at 612 (recognizing that "the presumption is that 'shall' is mandatory"), citing 2A Sands, Sutherland Statutory Construction (4th ed), § 57.03, pp 415-416. Therefore, under this well-accepted rule of statutory construction, MCL 600.1641(2) is a mandatory provision that demands the application of MCL 600.1629 over the permissive AG venue statutes in this case. See *Massey*, 462 Mich at 389-390 (CORRIGAN, J., concurring) (observing that

the "practical effect of subsection 1641(2) is that, in cases involving the joinder of multiple causes of action, venues determined by reference to § 1629 take precedence over venues determined by reference to the other substantive venue provisions").

Our conclusion is bolstered by the fact that MCL 600.1641(2) contains no exception for cases filed by DHHS, the Attorney General, or any other litigant. Surely the Legislature would have more clearly excepted certain venue statutes from MCL 600.1641(2)'s command had it intended to so cabin the statute's reach. Indeed, the Legislature knows well how to carve out exceptions to venue statutes when it intends to do so; it did just that in several neighboring provisions. See, e.g., MCL 600.1621 ("Except for actions provided for in sections 1605, 1611, 1615, and 1629, venue is determined as follows . . . ."); MCL 600.1627 ("Except for actions founded on contract and actions provided for in sections 1605, 1611, 1615, and 1629 . . . ."). But the Legislature did not incorporate any such exceptions into MCL 600.1641(2), instead opting to use the mandatory term "shall" in an unqualified manner.[6]

In light of this significant variation in statutory language, we decline DHHS's invitation to craft an exception to the compulsory language of MCL 600.1641(2). After

_____

[6] Justice WELCH counters that, because "the Legislature neither referenced MCL 600.1631 and MCL 14.102 nor repealed these provisions in any way" when amending what is now MCL 600.1641(2), the permissive AG venue provisions control over the mandatory tort venue provisions. We disagree. In addition to the reasons articulated above, we find it significant that MCL 600.1641(2) does not expressly reference *any* of the venue statutes that it modifies. Instead of enumerating every permissive venue statute restricted by MCL 600.1641(2), it appears that the Legislature intended for this provision to act as an across-the-board exception to permissive venue statutes. And because MCL 600.1641(2) does not include any exception for the AG venue statutes or otherwise, we decline to step into the shoes of the Legislature by crafting one ourselves.

13

all, courts "cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). See also *Arends v Grand Rapids R Co*, 172 Mich 448, 450-451; 138 NW 195 (1912) ("[I]t is not the province of this court to make an exception where the legislature has made none. The rule of construction is that the exception, if any, shall appear in the act."). Therefore, we conclude that MCL 600.1641(2)—when applicable—effectively turns the ordinarily permissive MCL 600.1629 into a mandatory venue provision that overcomes the permissive AG venue statutes. See 77 Am Jur 2d (February 2026 update), Venue, § 6 (explaining that "mandatory venue provisions trump permissive ones").

In resisting this conclusion, DHHS and Justice WELCH rely upon the general/specific canon of statutory interpretation. This canon provides that "when statutes conflict, the more specific provision governs over the more general one." *Milne v Robinson*, 513 Mich 1, 12; 6 NW3d 40 (2024). But like any canon, the general/specific canon is merely a tool that may help ascertain legislative intent—*not* a statutory straitjacket that applies in every situation. *Id*.

We find this canon unhelpful here for several reasons. First, applying it to adopt DHHS's interpretation would circumvent the Legislature's conspicuous use of mandatory language in MCL 600.1641(2) and permissive language elsewhere. In fact, this approach would require us to swap out the relevant statutory language, effectively rendering the mandatory provision permissive and the permissive provisions mandatory. We are without power to so contravene the Legislature's "preference for § 1629" under these circumstances. See *Massey*, 462 Mich at 389 (CORRIGAN, J., concurring). Second, the

14

general/specific canon is inapt when "[b]oth statutes are narrow and broad in their own ways such that determining which provision is more specific turns entirely on how you define the subject matter at issue." *Milne*, 513 Mich at 16-17. That is the case here. DHHS plausibly argues that the AG venue statutes are more specific because they involve suits brought by one *litigant*, whereas MCL 600.1641(2) applies to a broader subset of parties. Yet defendants reasonably respond that MCL 600.1641(2) is more specific because it applies only to certain kinds of *litigation*—cases involving a multiclaim complaint that includes a tort—while the AG venue statutes otherwise apply to *all* types of cases brought by the Attorney General in the name of the state or its people. "Under these circumstances, we discern no principled basis for determining which provision is more specific than the other, nor do we see how this inquiry illuminates how the Legislature intended for these statutes to interact." *Id*. at 17.[7] See also *Radzanower v Touche Ross & Co*, 426 US 148, 159; 96 S Ct 1989; 48 L Ed 2d 540 (1976) (Stevens, J., dissenting) (contending that the general/specific canon was unhelpful in resolving a venue dispute involving "a special statute for one kind of litigant" and "a special statute for one kind of litigation" because

---

[7] And even assuming that the AG venue statutes are more specific, "the general/specific canon is more likely to be probative of legislative intent when the specific statute is entirely—or almost entirely—subsumed by the more general one." *Id*. at 15 n 14 (emphasis omitted). Not so here. The AG venue statutes may still apply in any number of cases where MCL 600.1641(2) is inapplicable.

For that same reason, we disagree with Justice WELCH's assertion that our holding "throw[s] out" the AG venue statutes. Although we conclude that the AG venue statutes are inapplicable in multiclaim cases involving at least one tort claim, our holding goes no further. Nothing in this opinion restricts the application of the AG venue statutes in the multitude of *other* AG-initiated cases that do not implicate a competing, mandatory provision like MCL 600.1641(2).

15

"with equal logic we might describe either statute as creating an exception from the somewhat more general provisions of the other"). The general/specific canon thus cannot overcome the plain text of MCL 600.1641(2).

DHHS further argues that MCL 600.1641(2) does not compel the application of MCL 600.1629 under these facts because MCL 600.1641(2) is an "arrow"—not a "stop sign"—that merely points parties back to MCL 600.1629. And because MCL 600.1629(1) uses permissive language, the argument goes, its application is not made mandatory by MCL 600.1641(2). In other words, DHHS posits that other venues may still be proper here regardless of the mandatory language of MCL 600.1641(2).

We find this argument unpersuasive. Together with playing down the plain language of MCL 600.1641(2), DHHS's position violates the rule against surplusage. Under this interpretive maxim, courts are duty-bound to "avoid an interpretation that would render any part of the statute surplusage or nugatory" if at all possible. *State Farm Fire & Cas Co*, 466 Mich at 146. This canon therefore compels us to reject interpretations that would render a statute a "mere descriptor without any independent legal meaning." *South Dearborn Environmental Improvement Ass'n v Dep't of Environmental Quality*, 502 Mich 349, 374; 917 NW2d 603 (2018). Yet if the applicability of MCL 600.1629 in multiclaim cases involving a tort remained permissive even *after* considering MCL 600.1641(2), the latter provision would add nothing of value to the venue chapter. In other words, there would have been no practical reason for the Legislature to have enacted MCL 600.1641(2) if that provision merely points litigants and courts back to the same place they were *before*

16

consulting MCL 600.1641(2): deciding between two permissive venue provisions.[8]
Because MCL 600.1641(2) must do more than simply reaffirm the permissive nature of
MCL 600.1629(1), the rule against surplusage confirms our conclusion that MCL 600.1629
controls. See *South Dearborn Environmental Improvement Ass'n*, 502 Mich at 374.[9]

We accordingly hold that the permissive AG venue statutes must give way to
MCL 600.1629 when, as here, "more than 1 cause of action is pleaded in the
complaint . . . and 1 of the causes of action is based on tort . . . ." MCL 600.1641(2).[10]

---

[8] We also find noteworthy that the Legislature enacted MCL 600.1641(2) in 1995, decades
after it enacted the AG venue statutes. Since the permissive AG venue statutes were well
established by that point, it appears that the Legislature intended to modify their
applicability through the mandatory and unqualified language of MCL 600.1641(2). See
*Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993) ("[T]he
Legislature is presumed to be aware of, and thus to have considered the effect on, all
existing statutes when enacting new laws.").

[9] DHHS adds that this conclusion could lead to absurd results. Specifically, DHHS posits
that "if the Attorney General were to bring only one cause of action and that cause of action
is a tort, MCL 600.1629—being permissive in its language ('a proper venue')—would not
necessarily apply. Thus, the Attorney General could use the Attorney General statute,
MCL 600.1631(a) on a wholly tort case and circumvent the tort venue statute altogether by
alleging only one count." Justice WELCH echoes this argument. While we agree with
DHHS and Justice WELCH that this possibility might produce a curious result, we disagree
that it is enough to displace the statutory analysis set forth in this opinion. The more
appropriate forum in which to raise this argument would be the Legislature. See *People v
Harris*, 499 Mich 332, 356; 885 NW2d 832 (2016) ("It is not our role to rewrite the law or
substitute our own policy judgment in the face of the text of the statute . . . .").

[10] Given that the plain language of the pertinent statutes establishes that MCL 600.1629
controls in this case, we need not further determine whether the AG venue statutes apply
only to actions in which the state of Michigan or the Attorney General is the named plaintiff
or whether they also apply to an action brought by the Attorney General on behalf of a state
department.

## B. VENUE UNDER MCL 600.1629

Having concluded that MCL 600.1629 controls venue in this case, we now turn to the analysis under that provision. As outlined earlier, MCL 600.1629(1) provides the following hierarchy for determining venue in tort cases:

(1) Subject to subsection (2), in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, all of the following apply:

(a) The county in which the original injury occurred and in which either of the following applies is a county in which to file and try the action:

(*i*) The defendant resides, has a place of business, or conducts business in that county.

(*ii*) The corporate registered office of a defendant is located in that county.

(b) If a county does not satisfy the criteria under subdivision (a), the county in which the original injury occurred and in which either of the following applies is a county in which to file and try the action:

(*i*) The plaintiff resides, has a place of business, or conducts business in that county.

(*ii*) The corporate registered office of a plaintiff is located in that county.

(c) If a county does not satisfy the criteria under subdivision (a) or (b), a county in which both of the following apply is a county in which to file and try the action:

(*i*) The plaintiff resides, has a place of business, or conducts business in that county, or has its corporate registered office located in that county.

(*ii*) The defendant resides, has a place of business, or conducts business in that county, or has its corporate registered office located in that county.

(d) If a county does not satisfy the criteria under subdivision (a), (b), or (c), a county that satisfies the criteria under section 1621 or 1627 is a county in which to file and try an action.

18

Because the plain language of MCL 600.1629(1)(a) and (b) requires a determination of the county in which the "original injury occurred," we must examine where the alleged "original injury occurred" under the facts of this case.

### 1. MCL 600.1629(1) AND *DIMMITT*

We begin our original-injury analysis by recounting the pertinent statutory history of MCL 600.1629(1). "A statute's history—the narrative of the statutes repealed or amended by the statute under consideration—properly forms part of its context . . . ." *Dep't of Talent & Economic Dev/Unemployment Ins Agency v Great Oaks Country Club, Inc*, 507 Mich 212, 227; 968 NW2d 336 (2021) (quotation marks, citation, and brackets omitted). Put another way, "courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute." *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). The history of the relevant language in MCL 600.1629(1) therefore informs its current meaning.

With these principles in mind, we now consider the lineage of this law. The Legislature enacted MCL 600.1629(1) in 1986. 1986 PA 178. In its original form, Subsections (1)(a) and (b) did not use the phrase "original injury." Rather, these subsections "referred to a 'county in which all or a part of the cause of action arose' . . . ." *Dimmitt*, 481 Mich at 625, quoting MCL 600.1629(1), as enacted by 1986 PA 178. We interpreted this now-defunct language as meaning that "venue is proper where part or all of the cause of action arose, *not merely at the situs of the injury*." *Lorencz v Ford Motor Co*, 439 Mich 370, 377; 483 NW2d 844 (1992) (emphasis added). This Court later clarified

that venue under the preamendment language was proper "only at the situs of an injury, or in the place or places where the breach of a legal duty occurs that subsequently causes a person to suffer damages." *Gross*, 448 Mich at 165. See also *Dimmitt*, 481 Mich at 626-628 (summarizing additional preamendment caselaw). Accordingly, the relevant preamendment language of MCL 600.1629(1)(a) and (b) was considerably broader than the current "original injury" language. See *Dimmitt*, 481 Mich at 628.

Shortly after this Court decided *Gross*, the Legislature amended MCL 600.1629(1) to its modern form. See 1995 PA 161 and 1995 PA 249. In so doing, the Legislature replaced the phrase "[a] county in which all or a part of the cause of action arose," see 1986 PA 178, with the current phrase "[t]he county in which the original injury occurred," see 1995 PA 161 and 1995 PA 249.

We assessed the import of this legislative amendment in *Dimmitt*, 481 Mich 618. *Dimmitt* was an accounting-malpractice case. *Id*. at 623. The plaintiffs alleged that the defendants' breach of the standard of care constituted the original injury under MCL 600.1629. *Id*. at 631. And according to the plaintiffs, that breach occurred in Wayne County—the county in which the defendants' office was located. *Id*. at 623. The Court of Appeals disagreed, holding that the original injury occurred when the plaintiffs first relied on the information provided by the defendants. *Id*. Because that reliance occurred at the plaintiffs' places of business in Oakland County, the Court of Appeals held that venue was proper there. *Id*. at 624.

This Court affirmed the Court of Appeals, albeit on different grounds. In light of the Legislature's 1995 amendment of MCL 600.1629(1), we rejected the notion that "venue was proper in the county where the negligent omissions of the defendant occurred rather

20

than the county in which the original injury suffered by the plaintiff occurred." *Id*. at 628. We observed that this amendment "changed the law of venue in tort cases and considerably limited the county in which a cause of action can be brought." *Id*. That is, the amended statute "clearly and unambiguously limits venue to the situs of the original injury when either the defendant or the plaintiff resides, does business, or has a corporate office there." *Id*. "Because MCL 600.1629(1)(a) and (b), as amended, refer to the county where the 'original injury' occurred," we concluded that "courts must look to the first injury *resulting from* an act or omission of a defendant to determine where venue is proper." *Id*. at 630.

Against this backdrop, the *Dimmitt* Court held that the Court of Appeals erred by framing the inquiry as where the plaintiffs first *relied* on the defendants' alleged negligent act. *Id*. at 631. At that point, the only injury was a *potential* one, "namely, that [the plaintiffs'] investment decisions based on [the] defendants' negligence *might* turn out to be poor ones that *might* injure" the plaintiffs. *Id*. Accordingly, the first actual injury occurred in Oakland County, which was where the plaintiffs' principal places of business were and thus where the plaintiffs "could not satisfy [their] financial obligations and [were] forced to liquidate [their] assets" based on the defendants' alleged malpractice. *Id*.

### 2. THE ORIGINAL INJURY IN THE PRESENT CASE

Although the circumstances of *Dimmitt* are distinguishable from those of the present case, we find its legal reasoning instructive in determining where the original injury occurred here. *Dimmitt* teaches that the original-injury analysis hinges on where the

21

plaintiff allegedly suffered "the first injury *resulting from* an act or omission" of the defendant. *Dimmitt*, 481 Mich at 630. So framed, we must identify the county in which DHHS suffered its first alleged injury. See *id*. at 628. This inquiry is, of course, distinct from determining where defendants' alleged *wrongdoing* occurred. See *id*. (separating the "county where the negligent omissions of the defendant occurred" from "the county in which the original injury suffered by the plaintiff occurred").[11]

Here, DHHS alleges that defendants committed both common-law and statutory conversion by failing to return more than $500,000 in Medicaid overpayments upon demand.[12] At its core, common-law conversion is an intentional tort that is defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of

---

[11] We do, however, recognize that in many cases, the location of both the plaintiff's original injury and the defendant's wrongdoing may be the same county. The original-injury inquiry is necessarily dependent on the facts and cause(s) of action relevant to each case.

[12] Although we have held that money generally cannot be converted absent "an obligation to keep intact or deliver" the "specific or identical" monies in question, *Garras v Bekiares*, 315 Mich 141, 147, 149; 23 NW2d 239 (1946), MCL 400.111b(16) states that a provider who fails to repay Medicaid overpayments commits conversion:

> A provider promptly shall notify the director of a payment received by the provider to which the provider is not entitled or that exceeds the amount to which the provider is entitled. If the provider makes or should have made notification under this subsection or receives notification of overpayment under [MCL 400.111a(17)], the provider shall repay, return, restore, or reimburse, either directly or through adjustment of payments, the overpayment in the manner required by the director. *Failure to repay, return, restore, or reimburse the overpayment or a consistent pattern of failure to notify the director shall constitute a conversion of the money by the provider*. [Emphasis added.]

Accordingly, it is on this basis that DHHS rests its conversion claims.

22

or inconsistent with [their] rights therein." *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 351-352; 871 NW2d 136 (2015) (quotation marks and citation omitted).[13] A common context in which this tort arises is when one refuses to return property to its lawful owner upon demand. *Id*. at 352. See also MCL 400.111b(16). Statutory conversion is a separate cause of action—applicable when one converts property to their "own use"—that entitles the property owner to treble damages. See MCL 600.2919a(l)(a); *Aroma Wines*, 497 Mich at 354-357. Ultimately, the tort of conversion aims to secure the "right to personal property by allowing someone wrongfully deprived of his or her property to recover either that property or monetary damages, or both, for the wrongful deprivation." *Aroma Wines*, 497 Mich at 348.

In this case, the Court of Appeals held that the original injury under MCL 600.1629(1) occurred in Oakland County. Leaning on its pre-*Dimmitt* decision in *Ground Dev, Inc v Doyle & Lang, LLC*, unpublished per curiam opinion of the Court of Appeals, issued November 1, 2005 (Docket No. 255202), the Court determined that "the original injury occurred when defendants refused to return the disputed Medicaid funds upon request." *NRK RX, Inc*, ___ Mich App at ___; slip op at 6. Indeed, DHHS demanded the

---

[13] The tort of conversion finds its roots in ancient English common law. Blackstone, for instance, reported that this tort emerged from the notion that "if an acquisition of goods by either force or fraud were allowed to be a sufficient title, all property would soon be confined to the most strong, or the most cunning," and all other people "could never be secure of their possessions." 3 Blackstone, Commentaries on the Laws of England, p *145. Since the early days of this Court, we too have recognized the common-law tort of conversion in a number of different contexts. See, e.g., *Final v Backus*, 18 Mich 218, 221 (1869); *Greeley v Stilson*, 27 Mich 153, 154-156 (1873); *Thomas v Watt*, 104 Mich 201, 207; 62 NW 345 (1895).

overpayments from defendants only after administrative proceedings determined the overpayment amount and defendants failed to repay that amount. *Id*. at \_\_\_; slip op at 6. Accordingly, the Court concluded that the original injury occurred in Oakland County, the location of NRK's corporate office and where NRK refused to return the Medicaid overpayments. *Id*. at \_\_\_; slip op at 6. The panel thus laid venue in that county under MCL 600.1629(1)(a)(*ii*). *Id*. at \_\_\_; slip op at 6.

We disagree that the original injury occurred in Oakland County. The panel reached its conclusion by conflating the location of defendants' alleged *wrongdoing* with the location of the resulting *injury* suffered by DHHS. But as noted above, the operative inquiry under MCL 600.1629(1) and *Dimmitt* is where DHHS suffered the first actual injury resulting from defendants' "act or omission." *Dimmitt*, 481 Mich at 630. In other words, the location of the injury—not the location of the actions causing the injury—is what controls. See *id*.

Through this lens, DHHS suffered its first actual injury in Ingham County. To be sure, the act of conversion itself is "dominion wrongfully exerted over another's personal property in denial of or inconsistent with [their] rights therein." *Aroma Wines*, 497 Mich at 346 (quotation marks and citation omitted). So we do not quibble with the Court of Appeals' conclusion that defendants allegedly converted the sought Medicaid overpayments at their Oakland County registered office. But the *injury* stemming from defendants' alleged conversion was DHHS's lack of possession and its concomitant inability to exercise control or dominion over the intangible electronic funds in question. See *Dimmitt*, 481 Mich at 630 (explaining that "courts must look to the first injury *resulting from* an act or omission of a defendant to determine where venue is proper"). And that

24

injury was suffered by DHHS at its Ingham County headquarters, where it administers all relevant portions of Michigan's Medicaid program. Indeed, we fail to see how DHHS's injury resulting from defendants' alleged conversion of electronic funds could have occurred in a county in which DHHS was never in, principally or otherwise, for purposes of this case.[14]

We accordingly hold that the "county in which the original injury occurred" was Ingham County, and because that is where DHHS "resides, has a place of business, or conducts business," venue is proper there under MCL 600.1629(1)(b)(*i*).[15]

## IV. CONCLUSION

The Court of Appeals correctly held that MCL 600.1629(1) controls the venue determination in this case. See MCL 600.1641(2). But it erred by holding that venue is proper in Oakland County under that provision. Rather, venue is proper in Ingham County because that is the situs of the "original injury" and where DHHS "resides, has a place of business, or conducts business." MCL 600.1629(1)(b)(*i*). We therefore affirm the

---

[14] The inverse is not necessarily true. In today's digital age, one can easily "injure" someone in a different county, state, or country without ever stepping foot in that territory. And the location where such a wrongful act is committed does not control where the target experiences the resulting harm. We therefore find unpersuasive defendants' contention that DHHS's alleged injury could not have occurred in Ingham County because neither defendant was in Ingham County at the time of the alleged conversion.

[15] As outlined above, venue is proper under MCL 600.1629(1)(b)(*i*) when, as here, "a county does not satisfy the criteria under subdivision (a)" and the "original injury" occurred in the same county as where "[t]he plaintiff resides, has a place of business, or conducts business . . . ."

judgment of the Court of Appeals in part, reverse in part, and remand this case to the Oakland Circuit Court for entry of an order changing venue to the Ingham Circuit Court.

We do not retain jurisdiction.

Megan K. Cavanagh
Brian K. Zahra (as to Part III(A))
Richard H. Bernstein
Elizabeth M. Welch (as to Part III(B))
Kyra H. Bolden
Kimberly A. Thomas (as to Part III(A))

STATE OF MICHIGAN

SUPREME COURT

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

      Plaintiff-Appellant,

v                                                                          No. 167917

NRK RX, INC., and RAAD KOUZA,

      Defendants-Appellees.

_____

WELCH, J. (*concurring in part and dissenting in part*).

The Attorney General sued defendants NRK RX, Inc., and Raad Kouza in Ingham County in order to recoup Medicaid overpayments on behalf of plaintiff Department of Health and Human Services (DHHS). The five-count complaint included statutory and common-law conversion claims.[1] At issue is the proper venue for the Attorney General's lawsuit. The majority relies on MCL 600.1641(2), which governs multiclaim cases, including at least one tort, to conclude that venue for the Attorney General must be determined under the general tort venue statute, MCL 600.1629. I do not believe that this provision abrogates the Attorney General's longstanding authority to file an action in Ingham County (the location of our state government) pursuant to MCL 14.102 and MCL

_____

[1] This lawsuit was filed to enforce a DHHS administrative decision concluding that defendants had received $541,590.71 in overpayments. The Attorney General's complaint included claims for (1) enforcement of the final agency decision; (2) common-law conversion; (3) statutory conversion under MCL 400.111b(16); (4) breach of contract; and (5) unjust enrichment.

600.1631. As a result, I respectfully dissent from Part III(A) of the majority opinion. Despite my view not prevailing on that issue, I agree fully with the majority's analysis of venue under the tort venue statute, MCL 600.1629, and its conclusion that venue is proper in Ingham County because it is where the "original injury occurred." Accordingly, I join Part III(B) of the majority opinion.

## I. RELEVANT VENUE STATUTES

This case implicates two sets of venue statutes. The first set, MCL 14.102 and MCL 600.1631, is specific to lawsuits filed by the Attorney General. The second set, MCL 600.1629 and MCL 600.1641(2), governs venue for cases including tort claims. Specifically, MCL 600.1641(2) applies to lawsuits that allege multiple claims, at least one of which arises in tort, and provides that venue for such lawsuits "shall be determined" under the general tort venue statute, MCL 600.1629. The issue here is whether the Legislature intended for MCL 600.1641(2) to abrogate the Attorney General venue statutes in cases where the Attorney General files a lawsuit with multiple claims, including a tort claim.

## A. ATTORNEY GENERAL VENUE STATUTES

MCL 14.102 and MCL 600.1631 apply to cases brought by the Attorney General and state that venue is proper in Ingham County. See MCL 14.102 ("Any action at law brought by the attorney general in the name of the state or of the people of the state, for the use and benefit thereof, may be begun in the circuit court in and for the county of Ingham, and may be prosecuted to final judgment and satisfaction thereof, with like effect as though the cause of action arose in such county."); MCL 600.1631(a) ("The county in which the

2

seat of state government is located is a proper county in which to commence and try . . . [an] action [that] is commenced by the attorney general in the name of the state or of the people of the state for the use and benefit thereof[.]").

MCL 14.102 was enacted by 1919 PA 232.[2] Its language has been the same for over a century. When the Legislature enacted the Revised Judicature Act (RJA), MCL 600.101 *et seq*., as enacted by 1961 PA 236, it incorporated the preexisting rule that the Attorney General could file public lawsuits in Ingham County. See 1961 PA 236, § 1631(a). While some of the other venue provisions in the RJA have been amended several times, MCL 600.1631 has remained unchanged.

### B. TORT CLAIMS UNDER MCL 600.1641(2)

MCL 600.1641 is the generally applicable venue statute when multiple causes of action are joined in a lawsuit. MCL 600.1641(1) provides that venue for the whole case is proper in any county in which one of the individual claims could have been "commenced and tried." But MCL 600.1641(2) creates an exception to this rule. It states:

> If more than 1 cause of action is pleaded in the complaint . . . and 1 of the causes of action is based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, venue shall be determined under the rules applicable to action in tort as provided in section 1629. [MCL 600.1641(2).]

---

[2] This legislation was titled:

> AN ACT to supplement the laws of the State relating to the powers and duties of the Attorney General and the institution and prosecution of actions thereby on behalf of the State, to authorize intervention in pending litigation on behalf of the people in certain cases, *and to permit the bringing of any suit at law in which the State is a party plaintiff in the circuit court of Ingham county*. [1919 PA 232, title (emphasis added).]

3

In other words, when a plaintiff files a complaint that alleges more than one claim and at least one of those claims arises in tort, venue is governed by the tort venue statute, MCL 600.1629—and not any of the other potentially applicable options under MCL 600.1641(1).

Notably, when the "multiple claims" venue provision was first enacted as part of the RJA, it included only what is now MCL 600.1641(1). See 1961 PA 236, § 1641. The Legislature added MCL 600.1641(2) as part of a larger tort-reform package 33 years later in 1995. See 1995 PA 161, § 1641; 1995 PA 249, § 1641. These tort-reform changes, among other things, significantly curtailed joint and several liability in tort cases. See *id*.; House Legislative Analysis, HB 4508 (April 27, 1995).

And in an apparent effort to prevent forum shopping by tort plaintiffs, the package placed new limitations on venue for tort claims. Most notably, venue under MCL 600.1629 is proper in the location where "the original injury occurred." See *Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618, 625-628; 752 NW2d 37 (2008) (describing the effects of this change). MCL 600.1641(2) then made it clear that the more restrictive tort venue provision would still apply when a plaintiff pleads a non-tort claim alongside a tort claim.

## II. ANALYSIS

The majority holds that MCL 600.1641(2) overrides the Attorney General venue statutes. It concludes that because "MCL 600.1641(2) instructs that 'venue *shall be* determined under [MCL 600.1629],' " it "is a mandatory provision that demands the application of MCL 600.1629 over the permissive [Attorney General] venue statutes

4

[MCL 14.102 and MCL 600.1631] in this case." In contrast, I believe that context, history, and statutory interpretation principles demonstrate that MCL 600.1641(2) does not abrogate the Attorney General's ability to file a multicount lawsuit that includes tort claims in Ingham County, Michigan. I also believe that the provisions can be harmonized so as not to diminish the authority granted to the Attorney General.

## A. HISTORY AND CONTEXT OF MCL 600.1641(2)

The majority's analysis primarily relies on the word "shall" in MCL 600.1641(2) to abrogate the Attorney General venue statutes. In summary, the majority believes that the Attorney General statutes no longer apply to multicount tort complaints filed by the Attorney General because the Legislature, via MCL 600.1641(2), requires tort plaintiffs to file their lawsuits at the locus of the injury. I do not believe that MCL 600.1641(2) requires us to throw out the Attorney General venue statutes.

The Attorney General was granted specific authority to file lawsuits in Ingham County, the seat of our state's government. MCL 600.1641(2) does not override that authority. As described above, the Attorney General venue statutes have remained unchanged for over 100 years, despite major rewritings of other venue statutes and our rules of civil procedure. The scheme here was first enacted in 1919 and then incorporated into the RJA. See 1919 PA 232; 1961 PA 236, § 1631(a).

By contrast, MCL 600.1641(2) was enacted as part of a tort-reform package intended, among many other things, to curtail venue shopping by private tort plaintiffs. The majority asks us to believe that when the Legislature enacted this provision, it intended to overturn the long-established statutory scheme allowing the Attorney General to file

5

enforcement actions on behalf of the state in Ingham County. There is "nothing in the language or legislative history of this statute to support this conclusion." *People v Moreno*, 491 Mich 38, 57; 814 NW2d 624 (2012).

Chapter 16 of the RJA is dedicated exclusively to venue and contains a list of venue statutes specific to different types of actions.[3] And yet, when amending what is now MCL 600.1641(2), the Legislature neither referenced MCL 600.1631 and MCL 14.102 nor repealed these provisions in any way. Looking at the effect of the majority's reading confirms this understanding. MCL 600.1641(2) applies only when a tort claim is joined with another cause of action. It does not apply to a *single* tort claim. As the majority acknowledges, if the Attorney General were to bring a lawsuit alleging just one tort claim, she could file it in Ingham County under MCL 14.102 and MCL 600.1631. The majority acknowledges that this is a "curious" result of its interpretation.

In my view, there is no reason to believe the Legislature intended to treat a suit brought by the Attorney General alleging a single tort claim differently from a suit with two tort claims, or a tort claim and a contract claim. Both "history and common sense" weigh against the conclusion that the Legislature intended the word "shall" to mandate the application of MCL 600.1641(2) to the Attorney General and override the venue statutes applicable to her. *Honigman Miller Schwartz & Cohn LLP v Detroit*, 505 Mich 284, 295; 952 NW2d 358 (2020) ("Each word and phrase in a statute 'must be assigned such

---

[3] See MCL 600.1605 (real estate actions and actions to recover tangible property); MCL 600.1611 (probate bond actions); MCL 600.1615 (actions against governmental units); MCL 600.1629 (torts); MCL 600.1631 (actions filed by the Attorney General); MCL 600.1635 (actions against transportation lines). See also MCL 600.1621, MCL 600.1627, and MCL 600.1641 (generally applicable venue provisions).

meanings as are in harmony with the whole of the statute, construed in light of history and common sense.' ") (citation omitted). See also *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003) ("Although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context.").

## B. STATUTORY INTERPRETATION

My view of the venue statutes also is supported by traditional statutory interpretation principles. As an initial matter, the general/specific canon provides that "when statutes conflict, the more specific provision governs over the more general one," *Milne v Robinson*, 513 Mich 1, 12; 6 NW3d 40 (2024), and this canon of statutory interpretation has an obvious application to the situation here. MCL 600.1641(2) applies to every tort case filed in Michigan.

The Attorney General venue statutes apply to one very specific litigant who files lawsuits on behalf of the state and all the executive branch departments. Reading MCL 600.1641(2) to supplement, and not displace, the Attorney General venue statutes is consistent with the rationales behind the general/specific canon. Interpreting MCL 600.1641(2) to override the Attorney General venue statutes renders them "nugatory and ineffectual" in many cases. *Milne*, 513 Mich at 13. And it is quite reasonable to assume that "the legislature's attention was probably focused more directly" on the question here— determining the proper venue for a tort suit brought by the Attorney General—when it enacted the Attorney General venue statutes. *Id*. (quotation marks and citation omitted).

7

A variety of canons also stand for the principle that courts should seek to interpret a statute's provisions harmoniously and avoid conflicting constructions. Under the *in pari materia* canon, "statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law." *People v Mazur*, 497 Mich 302, 313; 872 NW2d 201 (2015). See also *Gross v Gen Motors Corp*, 448 Mich 147, 164; 528 NW2d 707 (1995) ("[C]ourts are bound to construe statutes so as to give them validity and a reasonable construction; seeming inconsistencies in the various provisions of a statute should be reconciled, if possible, so as to arrive at a meaning that gives effect to all parts of the statute."); *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 361; 917 NW2d 603 (2018) (related statutes must be read "together so as to harmonize their meaning, giving effect to the act as a whole") (quotation marks, citation, and brackets omitted).

In a similar vein, because "[r]epeals by implication are not favored," courts will not "indulge[] in [them] if there is any other reasonable construction." *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 576; 548 NW2d 900 (1996) (quotation marks and citation omitted). See also *Rathbun v Michigan*, 284 Mich 521, 544; 280 NW 35 (1938) ("Statutes *in pari materia*, although in apparent conflict, should, so far as reasonably possible, be construed in harmony with each other, so as to give force and effect to each, as it will not be presumed that the legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, unless it has done so in express terms[.]") (quotation

8

marks and citation omitted); *House Speaker v State Admin Bd*, 441 Mich 547, 562-563; 495 NW2d 539 (1993). These principles work against the majority's reading.[4]

My view is that the Attorney General venue statutes and the multiclaim/tort venue statutes can easily be "assigned . . . meanings" that are "in harmony" with each other and "with the whole of the statute." *Honigman Miller Schwartz & Cohn LLP*, 505 Mich at 295 (quotation marks and citation omitted). As then-Judge HOOD noted in his Court of Appeals dissent in this case, the Attorney General venue statutes "are permissive or discretionary venue statutes" that allow the Attorney General to file cases in Ingham County *if she chooses to file there*. *Dep't of Health & Human Servs v NRK RX, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (November 20, 2024) (Docket No. 364206) (N. P. HOOD, J., dissenting); slip op at 6. However, the Attorney General may choose not to file in Ingham County. Under these circumstances, venue would be determined under the generally applicable venue statutes that apply to every other litigant—including MCL 600.1641(2).

### III. CONCLUSION

For the reasons described above, I believe MCL 600.1641(2) does not override the application of the Attorney General venue statutes in this case and respectfully dissent from Part III(A) of the majority opinion. I would conclude that venue was proper in Ingham

---

[4] Then-Judge HOOD reached a similar conclusion in his Court of Appeals dissent in this case. Noting that the majority's reading would significantly limit the Attorney General's ability to file lawsuits in Ingham County, he concluded that it would amount to a "partial repeal" of the Attorney General venue statutes. *Dep't of Health & Human Servs v NRK RX, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (November 20, 2024) (Docket No. 364206) (N. P. HOOD, J., dissenting); slip op at 5. Because "repeals by implication are disfavored," *id*. at ___; slip op at 5 (quotation marks and citation omitted), he endeavored to read the two provisions "in harmony," *id*. at ___; slip op at 6.

9

County under MCL 14.102 and MCL 600.1631. But since my view did not prevail and the majority holds that MCL 600.1629 applies, I join Part III(B) of the majority's analysis under that statute and its conclusion that venue was proper in Ingham County.

Accordingly, I agree with the majority's disposition remanding this case with instructions to transfer venue to Ingham County.

Elizabeth M. Welch

STATE OF MICHIGAN

SUPREME COURT

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

       Plaintiff-Appellant,

v

       No. 167917

NRK RX, INC., and RAAD KOUZA,

       Defendants-Appellees.

THOMAS, J. (*concurring in part and dissenting in part*).

I concur with the majority opinion's holding that MCL 600.1629 and MCL 600.1641(2) exclusively govern where venue is proper in this matter because DHHS pleaded a complaint with more than one count and with at least one of those counts sounding in tort. This displaces the venue provisions specific to the Attorney General as found in MCL 14.102 and MCL 600.1631(a). However, I dissent from the majority opinion with respect to its application of the law in holding that Ingham County was the proper venue for this matter. While this case presents a close question of law, I believe that the "original injury" establishing venue under MCL 600.1629(1) occurred in Oakland County for the following reasons.

Plaintiff-appellant, the Michigan Department of Health and Human Services (DHHS), brought claims in the Ingham Circuit Court against defendant-appellee NRK RX, Inc., and its ostensible owner, defendant-appellee Raad Kouza, for statutory and common-law conversion, seeking repayment of overpaid Medicaid funds. NRK moved for a change

of venue to Wayne County, where Kouza resides, under MCL 600.1629 and MCL 600.1641(2).

As discussed in the majority opinion, MCL 600.1641(2) requires that, when a complaint pleads more than one cause of action and at least one of the causes of action sounds in tort, "venue shall be determined under the rules applicable to actions in tort as provided in section 1629." MCL 600.1629 provides a hierarchy of venues for tort actions. Applicable to this action, § 1629(1)(a)(*ii*) states that venue is proper in the county where both the "original injury" occurred and where a defendant has a corporate registered office.

The trial court granted the motion for a change of venue but transferred the matter to Oakland County instead of Wayne County because NRK's corporate registered office is in Oakland County and the "original injury" occurred there when NRK refused to return overpaid funds. The Court of Appeals affirmed the trial court in a 2-1 decision following the same reasoning. *Dep't of Health & Human Servs v NRK RX, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (November 20, 2024) (Docket No. 364206). This Court's majority opinion has now reversed, holding that venue is proper in Ingham County. Though the majority agrees that MCL 600.1641(2) and MCL 600.1629 govern, it asserts that the "original injury" occurred in Ingham County. It is on this point that I dissent.

The majority reasons, relying on *Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618, 630; 752 NW2d 37 (2008), that an "original injury" for purposes of venue hinges on where the plaintiff allegedly suffered "the first injury *resulting from* an act or omission . . . ." Therefore, the majority focuses its inquiry on where DHHS was located when it suffered its first alleged injury, as distinct from where NRK's wrongdoing occurred. In the majority's view, that injury "was DHHS's lack of possession

2

and its concomitant inability to exercise control or dominion over the intangible electronic funds in question," which was suffered by DHHS at its Ingham County headquarters; therefore, venue is proper in Ingham County.

I disagree with the majority's assessment about the "original injury" and where it occurred. To understand the injury, we look to the torts that are alleged. Here, DHHS has alleged common-law conversion and statutory conversion under MCL 400.111b(16).[1] As noted in the majority opinion, this Court has previously described common-law conversion as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with [their] rights therein." *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 351-352; 871 NW2d 136 (2015) (quotation marks and citation omitted). An "act of dominion" does not occur in a vacuum; it must have an object—the property—on which to act. "Dominion" means "[c]ontrol" or "possession" of a *thing*. *Black's Law Dictionary* (12th ed). In *Aroma Wines*, it was the plaintiff's wine inventory. In *Ground Dev, Inc v Doyle & Lang, LLC*, unpublished per

---

[1] MCL 400.111b(16) states that a provider who fails to repay Medicaid overpayments commits conversion:

> A provider promptly shall notify the director of a payment received by the provider to which the provider is not entitled or that exceeds the amount to which the provider is entitled. If the provider makes or should have made notification under this subsection or receives notification of overpayment under [MCL 400.111a(17)], the provider shall repay, return, restore, or reimburse, either directly or through adjustment of payments, the overpayment in the manner required by the director. *Failure to repay, return, restore, or reimburse the overpayment or a consistent pattern of failure to notify the director shall constitute a conversion of the money by the provider.* [Emphasis added.]

3

curiam opinion of the Court of Appeals, issued November 1, 2005 (Docket No. 255202), as relied on by the Court of Appeals in this case, it was heavy machinery. Here, it is money. "The general concept of 'property' comprises various rights—a 'bundle of sticks,' as it is often called—which is usually understood to include '[t]he exclusive right of possessing, enjoying, and disposing of a thing.' " *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 57; 602 NW2d 215 (1999), quoting *Black's Law Dictionary* (6th ed). Violating those rights—metaphorically taking or breaking any of the "sticks"—can be such an act of dominion, regardless of whether the act causes the owner to suffer additional damages.[2]

Michigan law has characterized conversion as defined not by an injury to a person, but an injury to property. See *Tillman v Great Lakes Truck Ctr, Inc*, 277 Mich App 47, 49; 742 NW2d 622 (2007) ("[C]onversion . . . constitutes an injury to property . . . ."); *Ins Co of North America v Mfr Bank of Southfield, NA*, 127 Mich App 278, 284; 338 NW2d 214 (1983) (M. J. KELLY, J., concurring) ("Michigan case law recognizes that a conversion is within the legal concept of an injury to property."); *Probst v Jones*, 262 Mich 678, 680; 247 NW 779 (1933) ("Wilful and malicious conversion is an injury to property within the meaning of present law . . . ."). Nothing in the elements of the common-law tort of conversion or the statutory conversion pled in this case requires the plaintiff to suffer physical or financial harm. Accordingly, the "original injury" occurs and is completed

---

[2] *Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438; 104 NW2d 360 (1960), adopts and helpfully quotes 1 Restatement of Torts, § 223 for various ways in which a conversion may be committed, including the mere use or misuse of a chattel without the owner's permission.

4

when the convertor undertakes the act of dominion.  This can even be something as minor as moving wine from one room to another.  *Aroma Wines*, 497 Mich at 341.

Therefore, for purposes of MCL 600.1629(1)(a), the "original injury" of a conversion claim is completed when the defendant wrongfully retained the property.  I would hold that venue is proper where the act of dominion occurred and deprived the plaintiff of their control over the property.

This is consistent with other injuries to property; for example, venue is proper for trespass where the injury to property occurs, not where the wrongdoing occurred.  See *Davis v Frankenlust Twp*, 118 Mich 494, 495; 76 NW 1045 (1898) (holding that venue was proper in Saginaw County when excavation in Bay County caused flooding in Saginaw County).  This is also consistent with *Ground Dev, Inc*, unpub op at 1, where the conversion claim centered on heavy machinery.  In that case, venue was proper in the county where the equipment was taken and where it was located when the defendant wrongfully refused to relinquish it to its owner.  *Id*. at 2.

The focus on the injury to the property is what distinguishes the present case from *Dimmitt* and other cases involving injury to a person (albeit a corporate "person" in *Dimmitt*).  In professional or medical malpractice, the "original injury" is the harm caused to the patient by the malpractice.  See *Taha v Basha Diagnostics, PC*, 275 Mich App 76, 80; 737 NW2d 844 (2007) ("The 'original injury' for purposes of MCL 600.1629(1)(a) was the physical harm to plaintiff . . . ."); *Karpinski v St John Hosp-Macomb Ctr Corp*, 238 Mich App 539, 547-548; 606 NW2d 45 (1999) (holding that venue was proper in Macomb County when a patient died in Wayne County but the physician had mistreated the patient in Macomb County).  For *Dimmitt*, the harm occurred when the plaintiffs could

5

not satisfy financial obligations, not when they initially relied on their accountants' malpractice. *Dimmitt*, 481 Mich at 631. As noted by the majority and the *Dimmett* Court, prior to that harm, the only "injury" was a potential injury. *Id*. Without that harm, the plaintiffs could not state their claim.

No such qualification applies to a conversion claim. The conversion claim comes into existence when and where the defendant undertakes their act of dominion. An additional harm to the plaintiff is not a required element of either the common-law claim of conversion or the statutory claim at issue in this case. MCL 400.111b(16) makes no mention of a plaintiff; it simply states that "[f]ailure to repay, return, restore, or reimburse the overpayment . . . shall constitute a conversion of the money by the provider." That failure is the act that is inconsistent with the plaintiff's rights. See *Dimmitt*, 481 Mich at 621 ("[T]he original injury is where the first actual injury occurred that resulted from an act or omission . . . .").

As a result, I believe that the majority opinion's focus on the purported harm suffered by DHHS is misplaced. The "original injury" occurred in Oakland County, where the funds were located[3] when defendants refused to return them. That makes venue proper

---

[3] Because this case concerns funds that were stored and transferred electronically, their "location" is a legal construct. With modern banking, one can access, transfer, or otherwise exert dominion over funds from almost anywhere. However, the parties do not dispute that defendants had control over the electronic funds and that defendant NRK's corporate office is in Oakland County. For purposes of this case, that suffices to establish a location of the funds, but in a future case, this Court may wish to address the general question of where electronic funds are located.

6

in the Oakland Circuit Court.  Therefore, I respectfully dissent from the majority's holding that Ingham County was the proper venue in this case.

Kimberly A. Thomas
Brian K. Zahra

HOOD, J., did not participate because he was on the Court of Appeals panel that issued the decision under review.

7